836 A.2d 52

COMMONWEALTH of Pennsylvania, Appellee

v.

Leroy FEARS, Appellant.

Supreme Court of Pennsylvania.

Argued March 3, 2003.

Decided Nov. 20, 2003.

Reargument Denied Feb. 19, 2004.

Caroline Roberto, Pittsburgh, for Leroy Fears, Appellant.

Rebecca Denean Spangler, Pittsburgh, Amy Zapp, Harrisburg, for the Com. of PA, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Chief Justice CAPPY.

This is a direct appeal from the judgment of sentence of death following the convictions of Appellant Leroy Fears for

first degree murder,[1] corruption of minors,[2] two counts of involuntary deviate sexual intercourse [3] and abuse of a corpse.[4] For the reasons set forth herein, we affirm.[5]

The record, developed at the suppression hearing, guilty plea proceeding and sentencing hearing, reveals that, on June 18, 1994, twelve-year-old Shawn Hagan and thirteen-year-old James Naughton met with other teenagers and Appellant, age thirty-two, at a fishing hole on the Monongahela River. The day before, Appellant had paid Naughton to bring a bottle of his parent's vodka from his home. Appellant and the boys spent the day drinking, swimming and fishing. Appellant, Hagan and Naughton eventually separated from the other boys and continued to fish farther down the river. When it began to get dark, Naughton left the area and Hagan continued to swim.

Upon coming to shore, Hagan removed his outer shorts to hang dry. Hagan sat down next to Appellant at which time Hagan's arm brushed Appellant. Appellant became aroused, told Hagan to stand, pulled Hagan's boxer shorts down, and performed oral sex on him. Appellant then asked Hagan what he was going to do about the incident. Hagan responded that he was going to tell his parents that Appellant had kidnapped him. Appellant then pushed Hagan to the ground, sat on top of him, and choked him for approximately five minutes. When Hagan stopped moving, Appellant removed his hands from Hagan's throat. Once Hagan started to revive and cough, Appellant choked him a second time for approximately ten minutes until Appellant was satisfied that Hagan was no longer alive. Appellant then rolled Hagan on to his stomach. Appellant again became aroused and performed anal sex on him. Appellant then placed Hagan's body in the river and kept watch for approximately twenty minutes. Appellant

1. 18 Pa.C.S. § 2501.

2. 18 Pa.C.S. § 6301.

3. 18 Pa.C.S. § 3123.

4. 18 Pa.C.S. § 5510.

5. All appeals in cases where the death penalty has been imposed are reviewed directly by this court. 42 Pa.C.S. § 9711(h)(1).

searched the riverbank, found a tire rim and tied it to Hagan's neck. He then swam Hagan's body out into the river where it sank below the surface.

On June 19, 1994, the City of Pittsburgh Police began an investigation into the disappearance of Hagan. They encountered Appellant while searching the area where Hagan had last been seen. Appellant offered to help the police and advised them that he was the last person to have seen Hagan. Appellant also told the officers that he was concerned that neighbors may suspect him in the disappearance because of a prior sexual contact he had with a young boy. After spending several hours with detectives, Appellant voluntarily agreed to accompany them to the Pittsburgh Police Detective Bureau.

In his initial statement, Appellant discussed fishing with Hagan, but did not admit to any criminal activity. As this was occurring, the police learned from another source that Appellant had paid Naughton to provide him with alcohol. Appellant overheard other officers discussing this information, and blurted out that he had given the boy money for vodka, but denied making the boys drink it. The detectives advised Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and presented him with a pre-interrogation warning form. Appellant responded that he was willing to provide the police with a written statement, but that he would no longer speak with the officers. All questioning ceased. The police charged Appellant with corruption of minors and incarcerated him on that charge.

The following day, police discovered a boy's body in the Monongahela River, which was later identified as that of Shawn Hagan. The detectives sought to question Appellant and he exhibited a willingness to speak to them. Appellant was then transported from the Allegheny County Jail to the Pittsburgh Police Station and completed a pre-interrogation written waiver form. Appellant was orally advised of his *Miranda* rights, and executed another pre-interrogation written waiver form. When the detectives advised Appellant that they had discovered Hagan's body and could link him to his

death, Appellant confessed to the murder. After the confession, Appellant took the detectives to the scene of the crime and explained how he committed the offense. He then agreed to provide a video-taped confession wherein he again relayed details regarding the manner of death.

Appellant was thereafter charged with criminal homicide, corruption of minors, two counts of involuntary deviate sexual intercourse (IDSI) and abuse of a corpse. Appellant filed a motion to suppress his video-taped statement on the ground that it was involuntarily made. Following a suppression hearing, the trial court found that the video confession was given after at least two occasions where Appellant was Mirandized and waived his rights in written form and on tape. Notes of Testimony, Suppression Hearing, December 8, 1994, at 51. It further found that there were no promises made to Appellant and therefore the confession was completely voluntary. *Id.* at 52.

The court denied suppression and, on December 8, 1994, Appellant entered a plea of guilty to first-degree murder as well as to the remaining charges. He also noted his desire to proceed to sentencing without a jury. Following a colloquy that took place that same day, the trial court accepted Appellant's plea. The penalty proceeding was delayed so that a psychological evaluation of Appellant could be conducted.

A penalty hearing was conducted before the court on February 2, 1995. The trial court found that the aggravating circumstance of a killing committed while in perpetration of a felony, 42 Pa.C.S. § 9711(d)(9), outweighed the catchall mitigating circumstance of evidence concerning the character and record of the defendant and the circumstances of the offense, 42 Pa.C.S. § 9711(e)(8),[6] and sentenced Appellant to death. The court imposed consecutive sentences of ten to twenty years of incarceration for one count of IDSI, no further penalty on the second count of IDSI, one to three years of

6. As examples of the other evidence of mitigation, the verdict slip stated that Appellant was an abused child, Appellant used alcohol prior to the offense, and that Appellant was diagnosed as a pedophile.

incarceration for abuse of corpse and one to two years of incarceration for corruption of minors.

On January 12, 1996, Appellant filed a *pro se* post-conviction petition, wherein he alleged the ineffectiveness of trial counsel. On April 16, 1999, the Commonwealth filed a motion requesting certification of the death sentence for appellate review, which the court granted. On April 21, 1999, Appellant filed a reply wherein he requested that his appellate rights be reinstated. The trial court vacated its April 19, 1999 order certifying the case for appellate review and reinstated Appellant's appellate rights. Counsel was subsequently appointed. On June 4, 1999, Appellant filed a notice of appeal and thereafter requested an evidentiary hearing on the issues of ineffective assistance of counsel. Evidentiary hearings were conducted and the trial court denied relief. A concise statement of matters complained of on appeal was filed on September 12, 2001, and the trial court opinion was issued on June 4, 2002. This appeal follows.

■■■■ As in all cases where the death penalty has been imposed, we first must conduct an independent review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Ockenhouse*, 562 Pa. 481, 756 A.2d 1130, 1135 (2000). This standard is applicable in cases where the evidence is circumstantial, as long as the evidence implicates the accused in the crime beyond a reasonable doubt. *Id.*

■■■■ A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing. 18

Pa.C.S. § 2502(a). An intentional killing is a killing "by means of poison, or by lying in wait, or by another kind of willful, deliberate and premeditated killing." *Id.* The willful, deliberate, and premeditated intent to kill is the element that is unique and distinguishes first degree murder from other degrees of murder. *Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293, 297 (1996). The evidence presented at the suppression hearing and summarized by the Commonwealth at the guilty plea colloquy demonstrates that Appellant intentionally choked the twelve-year old victim after sexually assaulting him. When the boy began to show signs of life a few moments later, Appellant again choked him for approximately ten minutes until he was certain that the child was dead. These criminal acts are clearly sufficient to establish murder of the first degree.

We now proceed to address the claims raised by Appellant on appeal. Initially, we note that some of Appellant's claims allege ineffective assistance of counsel. This Court recently abrogated the procedural rule requiring new counsel to raise claims of previous counsel's ineffectiveness at the first opportunity when new counsel was appointed. *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002). In *Grant,* we announced a new general rule providing that a defendant "should wait to raise claims of ineffective assistance of trial counsel until collateral review." 813 A.2d at 738. Our decision was based on the fact that claims of ineffectiveness were not suited for direct appeal due to the lack of a trial court opinion addressing the issues as well as the lack of an evidentiary record upon which the appellate court could review the claims. We held that the new rule applies retroactively to "any other cases on direct appeal where the issue of ineffectiveness was properly raised and preserved." *Id.*

In *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831, 2003 Pa. Lexis 920 (2003), however, we held that where the concerns that arose in *Grant* did not exist, *i.e.,* where there was a trial court opinion addressing the claims of ineffective assistance and there was an adequate record devoted to the ineffectiveness claims, our court would proceed to consider the

ineffectiveness claims on direct appeal. The instant case is primarily controlled by our decision in *Bomar*, as the trial court opinion addressed Appellant's allegations of ineffective assistance of counsel and an evidentiary hearing was held where trial counsel testified as to his strategy in the case.[7] Thus, we will examine Appellant's claims alleging ineffective assistance of counsel.

To prevail on a claim that counsel was constitutionally ineffective, the appellant must overcome the presumption of competence by showing that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. *Commonwealth v. (Michael) Pierce*, 567 Pa.186, 786 A.2d 203, 213 (2001). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused Appellant to enter an involuntary or unknowing plea. *Commonwealth v. Allen*, 557 Pa. 135, 732 A.2d 582, 587 (1999).

Appellant first contends that trial counsel was ineffective for failing to move to suppress his confession on the grounds that it violated the Fifth Amendment to the United States Constitution as articulated by *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). He argues that his right to counsel pursuant to the Fifth Amendment privilege against self-incrimination was violated at the time the police questioned him following his arrest on the criminal homicide charge. He contends that his right attached the previous day when he was arrested and interrogated on the corruption of minors charge and that it precluded the police from subsequently interrogating him on the criminal homicide charge. Appellant concludes that trial counsel's ineffectiveness in this regard rendered his plea to first degree murder unknowing

7. As noted *infra* at 69 and 71, we will not address claims of ineffective assistance of counsel that were not preserved below, presented at the evidentiary hearing and addressed by the trial court in its opinion.

and involuntary because he would not have pled guilty had counsel successfully pursued the suppression motion on this ground.

In *Edwards,* the defendant was arrested and questioned by police after being informed of his rights as required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602 (1966).[8] Questioning ceased when the defendant stated that he wanted an attorney. The next day, while incarcerated, police officers again informed the defendant of his *Miranda* rights and the defendant ultimately agreed to speak with the officers. He thereafter implicated himself in the murder. The defendant moved to suppress his confession on the ground that his *Miranda* rights had been violated when the officers returned to question him after he had invoked his right to counsel. The trial court denied suppression and the Arizona Supreme Court affirmed.

The United States Supreme Court reversed on the ground that the use of the defendant's confession against him at trial violated his rights under the Fifth and Fourteenth Amendments to have counsel present during custodial interrogation, as declared in *Miranda.* It held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484, 86 S.Ct. 1602. It further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication with the police. *Id.* The Court emphasized that it is inconsistent with *Miranda* to reinterrogate an accused in custody if he has clearly asserted his right to counsel.

**8.** In *Miranda,* the Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney. 384 U.S. at 479, 86 S.Ct. 1602.

■ Appellant's argument is meritless because the record does not establish that Appellant clearly invoked his right to counsel so as to trigger *Edwards'* prophylactic prohibition against all further police-initiated conversation. The record demonstrates that on June 20, 1994, Appellant initially encountered police at the scene of the crime where Appellant voluntarily offered his assistance, purportedly to aid in the search for the victim. Appellant agreed to go with the officers to the Pittsburgh Police Detective Bureau to further discuss the disappearance of the boy. While there, Appellant admitted to swimming with the victim, but did not implicate himself in the murder. Appellant then overheard other officers discussing how Appellant had given the victim's friend money for alcohol the day before the murder. The officer testified that Appellant then spontaneously stated, "I gave him the money, but I didn't make him drink it." Notes of Testimony, Evidentiary Hearing dated June 27, 28, 2000 at 41. As Appellant had implicated himself in the offense of corruption of minors, questioning ceased and the officers read Appellant his *Miranda* rights.

■ Appellant then stated, "I don't want to say anything out loud anymore, but I am willing to keep writing." *Id.* at 42. At no time did Appellant ask for an attorney. *Id.* To invoke the right to counsel, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by police" is required. *Commonwealth v. Hayes,* 755 A.2d 27, 33 (Pa.Super.2000), *quoting McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Appellant clearly did not convey a desire for counsel, but only declined to continue providing an oral statement. He continued to provide police a written statement. Thus, the interrogation that occurred the following day on June 21, 1994, which concerned the criminal homicide, did not violate Appellant's Fifth Amendment rights under *Edwards*. The confession resulting from the interrogation was therefore not constitutionally infirm and the subsequent guilty plea to first degree murder cannot be found to be invalid on this ground. As the

underlying suppression claim fails, trial counsel cannot be deemed ineffective for failing to assert it.

Appellant next contends that the trial court committed reversible error by permitting him to plead guilty to first degree murder, thereby making himself eligible for the death sentence, without requiring the Commonwealth to establish his degree of guilt. He cites several cases which expressly state that an accused may not plead guilty to murder of the first degree. *See Commonwealth v. Appel,* 547 Pa. 171, 689 A.2d 891, 895 n. 3 (1997); *Commonwealth ex rel. Kerekes v. Maroney,* 423 Pa. 337, 223 A.2d 699, 701 (1966); *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317, 319 (1947); *Commonwealth v. Iacobino,* 319 Pa. 65, 178 A. 823, 825 (1935); *Commonwealth v. Berkenbush,* 267 Pa. 455, 110 A. 263, 265 (1920). Appellant argues that the prohibition against pleading guilty to first degree murder is based upon the Due Process Clause of the Pennsylvania Constitution which provides, *inter alia,* that a person cannot be deprived of liberty, "unless by the judgment of his peers *or the law of the land."* Pa. Const. art. 1, § 9 (emphasis added).

Contrary to Appellant's assertions, the case law upon which he relies does not preclude the acceptance of such a plea on constitutional grounds. Rather, each case cited above discusses the presumptions in the burdens of proof in a murder case and notes that it is the Commonwealth's burden to demonstrate that the defendant possessed the specific intent to kill required for a conviction of first degree murder. Although the cases state in *dicta* that one cannot plead guilty to first degree murder, they do not hold that the acceptance of a guilty plea to first degree murder violates due process as guaranteed by Article 1, Section 9. *See Commonwealth v. Appel,* 689 A.2d at 895 n. 3; *Commonwealth ex rel. Kerekes v. Maroney,* 223 A.2d at 701; *Commonwealth v. Jones,* 50 A.2d at 319 (Pa.1947); *Commonwealth v. Iacobino,* 178 A. at 825; *Commonwealth v. Berkenbush,* 110 A. at 265. Most significantly, the cases do not involve the factual predicate of a defendant entering a guilty plea to first degree murder and do

not include an analysis as to why such pleas are constitutionally prohibited if they are knowingly, voluntarily and intelligently entered.[9]

The issue of whether a trial court violates due process by accepting a guilty plea to first degree murder appears to be one of first impression. We have held that the due process inquiry, in its most general form, entails an assessment as to whether the challenged proceeding or conduct offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, and that defines the community's sense of fair play and decency. *Commonwealth v. Kratsas*, 564 Pa. 36, 764 A.2d 20, 27 (2001).

We hold that the community's sense of fair play and decency is not offended by the trial court's acceptance of a guilty plea to first degree murder as long as it is determined that the plea is knowingly, voluntarily and intelligently entered. Safeguards exist to protect against an arbitrary imposition of the death sentence. For example, our Court conducts an independent review of the sufficiency of the evidence in every capital case. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982). This review is in conjunction with our statutory obligation under 42 Pa.C.S. § 9711(h)(3), which requires this Court to examine whether the sentence of death was the product of passion, prejudice or any other arbitrary factor, and to determine whether the evidence supports at least one aggravating circumstance. These protections act to prevent the imposition of a death sentence based solely upon a defendant's proclamation of guilt. Permitting a defendant to plead guilty preserves a defendant's autonomy in deciding whether to proceed to trial and allows a

9. Appellant also cites cases which hold that a plea to murder generally does not constitute a plea to first degree murder. *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624, 626 (1991); *Commonwealth v. Morley*, 545 Pa. 420, 681 A.2d 1254 (1996). While we do not dispute this proposition, we find it inapplicable here because Appellant did not enter a plea to murder generally, but instead pled guilty to murder of the first degree.

defendant to accept full responsibility for his conduct in the appropriate case.

Moreover, although the present issue was not raised, this Court has affirmed the judgment of sentence in cases where guilty pleas to first degree murder were entered and accepted by the trial court. *See Commonwealth v. Fiebiger*, 570 Pa. 583, 810 A.2d 1233, 1239 (2002) ("As Appellant's guilty plea was entered knowingly, intelligently, and voluntarily, with Appellant acknowledging that he committed each element of first degree murder, we do not find that the conviction was the product of passion, prejudice, or any other arbitrary factor [under 42 Pa.C.S. § 9711(h)(3)(i)] and therefore affirm the conviction."); *Commonwealth v. Ockenhouse*, 562 Pa. 481, 756 A.2d 1130 (2000) (death sentence affirmed where the guilty plea to first degree murder was accepted following a colloquy in which it was determined that the defendant knowingly and voluntarily entered the plea); *Commonwealth v. Michael*, 544 Pa. 105, 674 A.2d 1044 (1996) (judgment of sentence of death affirmed where trial court accepted guilty plea to offense of first degree murder).[10]

Permitting a defendant to plead guilty to first degree murder is also consistent with our death penalty statute, which contemplates the acceptance of a guilty plea to that specific offense. Section 9711, entitled "Sentencing procedure *for murder of the first degree*," states the following in subsection (b):

> Procedure in nonjury trials and *guilty pleas.*—If the defendant has waived a jury trial *or pleaded guilty*, the sentencing proceeding shall be conducted before a jury impaneled for that purpose unless waived by the defendant with the consent of the Commonwealth, in which case the trial judge shall hear the evidence and determine the penalty in the

10. In his subsequently filed PCRA petition, the defendant in *Michael* raised the issue of whether the trial court erred in accepting the plea to first degree murder without holding a degree of guilt hearing. *Commonwealth v. Michael*, 562 Pa. 356, 755 A.2d 1274 (2000). We denied relief, however, finding the issue to be waived.

same manner as would a jury as provided in subsection (a) [Procedure in jury trials.].

42 Pa.C.S. § 9711(b) (emphasis added).

Similarly, the Pennsylvania Rules of Criminal Procedure do not preclude the acceptance of a guilty plea to first degree murder. Chapter 8 of the Rules of Criminal Procedure is entitled, "Special Rules for Cases In Which Death Sentence is Authorized." Rule 802 states:

Rule 802. Guilty Plea Procedure

(A) When a defendant charged with murder enters a plea of guilty to a charge of murder generally, the judge before whom the plea is entered shall alone determine the degree of guilt.

(B) If the crime is determined to be murder of the first degree the sentencing proceedings shall be conducted as provided by law.

Pa.R.Crim.P. 802. This rule clearly establishes that a degree of guilt hearing is a procedural *alternative* that a defendant may pursue and not a required element necessary for the court to accept a plea to first degree murder. Accordingly, we hold that the trial court did not violate the Due Process Clause of the Pennsylvania Constitution, Pa. Const. art. 1, § 9, by accepting Appellant's plea of guilt to the offense of first degree murder.

In a related claim, Appellant contends that trial counsel was ineffective for advising him to plead guilty to first degree murder because such plea is prohibited. As we reject Appellant's argument that one may not plead guilty to first degree murder, we likewise reject the ineffectiveness claim arising from this issue.

 Appellant, however, raises a separate ground of ineffectiveness arising from counsel's failure to advise Appellant of the option of proceeding to a degree of guilt hearing. Appellant asserts that trial counsel testified at the evidentiary hearing that he was unaware of the possibility of proceeding to a degree of guilt hearing and therefore counsel could not have advised him of that alternative. He contends that such

omission rendered his plea invalid. This claim fails as it is not supported by the record. Contrary to Appellant's contentions, trial counsel did *not* testify that he was unaware of the option of proceeding to a degree of guilt hearing. Rather, trial counsel stated that he was unaware of any case law precluding a defendant from entering a plea to murder of the first degree. Notes of Testimony, Evidentiary Hearing dated June 27–28, 2000, at 83. The exchange between the prosecution, trial counsel and the court indicates that the alternative of proceeding to a hearing to determine the degree of guilt was explored. Notes of Testimony, Suppression Hearing/Guilty Plea Transcript dated December 8, 1994, at 56–57. The claim of ineffectiveness therefore lacks arguable merit.[11]

Having determined that Appellant's plea to first degree murder was not *per se* invalid, we proceed to examine whether it was knowingly, voluntarily and intelligently entered. This determination is intertwined with the resolution of Appellant's next claim, which challenges the guilty plea colloquy as deficient on several grounds. Appellant reiterates that the colloquy failed to inform him of his right to a degree of guilt hearing, the elements of first degree murder, and an adequate definition of malice as is required under *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). He further contends that the standard guilty plea form was used and completed without counsel present and that no effort was made to alter that form to explain the unique aspects of a capital case. Specifically, he asserts that he was not informed that he could be tried at the guilt phase by a jury and then proceed to the sentencing phase before a judge, that he could life-qualify the jury, that he had the right to individual voir dire, and that a capital defendant has twenty preemptory challenges.

11. Appellant also argues that counsel was ineffective for advising him to plead guilty to first degree murder because the evidence establishes a lesser degree of homicide. In *Commonwealth v. Marsh,* 440 Pa. 590, 271 A.2d 481, 483 (1970), we held that the key question is whether the defendant had the opportunity to make a reasonable choice. This claim lacks arguable merit because Appellant was advised of the elements of first degree murder as well as the differences between the various degrees of criminal homicide prior to the entrance of his plea in open court. Evidentiary Hearing at 145. Thus, Appellant had an opportunity to make a reasoned decision.

In determining a defendant's actual knowledge of the implications and rights associated with a guilty plea, we have held that "a court is free to consider the totality of the circumstances surrounding the plea." *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 588–589 (1999). The trial court may consider a wide array of relevant evidence under this standard including, but not limited to, transcripts from other proceedings, off-the-record communications with counsel, and written plea agreements. *Id.* at 589.

In reviewing the totality of the circumstances surrounding Appellant's plea, we hold that the record supports the trial court's finding of a sufficient colloquy and a knowing, voluntary and intelligent plea to first degree murder. The record reflects that at the colloquy, Appellant indicated his desire to plead guilty to the specific offense of first degree murder. Suppression/Guilty Plea Transcript at 57. Trial counsel informed the court that he had discussed with Appellant how the Commonwealth's evidence was sufficient to justify a verdict of murder of the first degree, *i.e.,* that Appellant's audio-taped confession stating that he choked the victim a second time until he was certain that the boy was dead was sufficient for a jury to find that he had acted with the specific intent to kill the victim. Suppression/Guilty Plea Transcript at 58. The court advised Appellant that by pleading guilty to first degree murder, he was pleading guilty to "the intentional, premeditated killing with malice aforethought to the victim in this case, Shawn Hagan." Suppression/Guilty Plea Transcript at 57.[12] The court specifically inquired as to whether Appellant understood the nature of the charges and the possible penalties on the related charges and Appellant responded in

12. Appellant contends that this definition is inadequate under *Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77 (1974). In *Ingram,* the defendant pled guilty to an indictment charging him with murder. Following a degree of guilt hearing, he was convicted of second degree murder. Prior to entry of the plea, the defendant was asked: (1) whether he understood that the charge was murder; and (2) whether he understood that by pleading guilty, he would be admitting that he shot and killed the victim.

the affirmative. Suppression/Guilty Plea Transcript at 62. The prosecutor gave a detailed summary of the evidence in support of the charges. Suppression/Guilty Plea Transcript at 62–67. After the summary was read, the court inquired as to why Appellant was pleading guilty. Appellant responded, "Because that's the truth." Suppression/Guilty Plea Transcript at 68. He further expressed great remorse for committing the murder. Suppression/Guilty Plea Transcript at 73.

The trial court also incorporated the ten-page standard guilty plea form into the oral colloquy. The written waiver form explained, *inter alia*, the constitutional right to a jury trial, the concept of peremptory and "for cause" challenges to jurors, the fact that the Commonwealth was required to prove each element of each crime beyond a reasonable doubt, the definition of reasonable doubt, the presumption of innocence, the rights foregone by pleading guilty, and appellant's post-trial and appellate rights. The written form was completed, initialed on each page, and signed by Appellant. Trial counsel explained that, although he was not present when Appellant completed the form, he had previously advised Appellant of what the form entailed and asked him to read it and answer the questions. Suppression/Guilty Plea Transcript at 70. Trial counsel further stated that he was available to Appellant and Appellant did not indicate that he had any questions about the form. Suppression/Guilty Plea Transcript at 70. Thus, the colloquy demonstrated that Appellant was aware of the factual basis for the plea and that he understood the nature of the charges to which he was pleading.[13]

Our Court reversed and remanded for a new trial, finding the inquiry inadequate. We held that "shooting and killing" did not necessarily constitute murder and that appellant was entitled to an explanation of the elements of the crime of murder with an illustrative elucidation of the term "malice." *Id.* at 80. The instant case is distinguishable as the trial court instructed Appellant that by pleading guilty he was admitting to the "intentional, premeditated killing with malice aforethought." Unlike in *Ingram*, this definition conveys the controlling legal principle that to establish first degree murder there must be a specific intent to kill.

13. Because the record supports the trial court's determination that the colloquy was sufficient and Appellant's plea was valid, trial counsel cannot be found ineffective for failing to raise a meritless objection.

Furthermore, at the evidentiary hearing, trial counsel explained that he had advised Appellant that his statements to police would be very difficult to overcome and that taking responsibility by pleading guilty to first degree murder could be viewed by the court as a mitigating factor that could avoid the imposition of the death penalty. Evidentiary Hearing at 82. Counsel explained that he had discussed with Appellant the proper number of peremptory challenges in a capital case, Evidentiary Hearing at 143, the different degrees of homicide, Evidentiary Hearing at 145, the fact that the jury in the penalty phase of the trial had to be unanimous in finding that the Commonwealth had proven aggravating circumstances beyond a reasonable doubt, Evidentiary Hearing at 146, and the fact that the jury did not have to be unanimous in finding a mitigating circumstance. Evidentiary Hearing at 148. Based on all of the above, Appellant's plea was knowing and voluntary.

Appellant next contends that it was error for the trial court to accept Appellant's guilty plea to the first count of IDSI, which was based upon the oral sodomy that preceded the strangulation of the victim.[14] He asserts three separate grounds upon which to find the plea invalid. Appellant first argues that there was no factual basis for the plea because there was no evidence of forcible compulsion. *See* 18 Pa.C.S. § 3123(a) (stating that a person commits IDSI when he engages in deviate sexual intercourse with a complainant by forcible compulsion).[15] He relies on the prosecutor's summary of the evidence at the guilty plea proceeding, which stated that

14. This issue was not before the trial court and is therefore waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.") Nevertheless, we will address the merits of the claim pursuant to the relaxed waiver rule applicable to capital direct appeals. See *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003) (stating that although relaxed waiver has been modified, that change does not apply to cases, such as this one, where the appellate brief was already filed in this Court when *Freeman* was announced on May 30, 2003).

15. We note that, for a reason not apparent from the record, Appellant was charged with Subsection (1) of Section 3123, which requires forcible compulsion for IDSI, as opposed to Subsection (6), which applied to complainants who are less than thirteen years of age.

"[the victim] did not respond to this particular act [the oral sodomy] with resistance." Suppression Hearing/Guilty Plea Transcript at 64. Appellant concludes from this statement that no force was used to commit the sexual act upon the boy and therefore there was no factual basis for that element of the offense.

This claim fails because the element of forcible compulsion was clearly established. In *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217 (1986), a twenty-year-old defendant lured an eight-year-old girl into an abandoned building and instructed her to lie down, whereupon he performed sexual acts upon her. The Superior Court reversed the defendant's rape conviction under 18 Pa.C.S. § 3121(1), on the ground that no force was used to commit the rape. We reversed, holding that 'forcible compulsion' "includes not only physical force or violence but also moral, psychological, or intellectual force used to compel a person to engage in sexual intercourse against that person's will." *Id.* at 1226. We stated:

> There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases, forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult ("prevent resistance"), without the use of physical force or violence or the explicit threat of physical force or violence.

*Id.* at 1227.

The same is true in the instant case. Here Appellant, age thirty-two, stated in his confession that he told the twelve-year-old victim "to stand up and [Appellant] pulled down his underwear and started to have oral sex with him." Suppression Hearing/Guilty Plea Transcript at 78–79. When this occurred, it was dusk and Appellant and the victim were in a

secluded river location. Under these circumstances, Appellant's actions clearly constitute forcible compulsion within the contemplation of the IDSI statute. Thus, a factual basis for the plea existed and Appellant's claim fails.

Appellant's next ground for invalidating the plea to the first count of IDSI is based upon the *corpus delicti* rule. Under the *corpus delicti* rule, extrajudicial statements of the accused may not be admitted into evidence unless corroborated by independent evidence that the crime actually occurred. *Commonwealth v. McMullen*, 545 Pa. 361, 681 A.2d 717, 720 (1996). The purpose of the rule is to prevent a conviction based solely upon a confession where no crime has in fact been committed. *Commonwealth v. Turza*, 340 Pa. 128, 16 A.2d 401 (1940). Appellant argues that there is no independent physical, eyewitness, or other evidence to establish the sodomy and therefore the trial court erred in accepting his guilty plea to IDSI.

Although we agree that there is no independent evidence of the oral sodomy, we find that the confession could have been used to establish those offenses under the exception to the *corpus delicti* rule, commonly referred to as the closely related crime exception. This Court adopted the closely related crime exception in *McMullen, supra*. We stated that

> where a defendant's confession relates to two separate crimes with which he is charged, and where independent evidence establishes the *corpus delicti* of only one of those crimes, the confession may be admissible as evidence of the commission of the other crime. This will be the case only where the relationship between the two crimes is sufficiently close to ensure that the policies underlying the *corpus delicti* rule are not violated.

*Id.* at 723 (citations omitted).

The facts of the instant case fall under the closely related crime exception to the *corpus delicti* rule. Appellant committed the sexual assault and the murder of the child within minutes and the purpose of the murder was to conceal the sexual assault. Therefore the relationship between the

crimes was sufficiently close and the policy underlying the *corpus delicti* rule—to avoid convictions for crimes that did not occur—is not violated. As there was independent evidence establishing the corpus delicti of the murder, Appellant's confession was admissible as evidence of the IDSI. The trial court therefore did not err in accepting Appellant's guilty plea to that offense.

Our conclusion is consistent with the approach taken in *Commonwealth v. Bardo*, 551 Pa. 140, 709 A.2d 871 (1998). In *Bardo*, the defendant confessed that he strangled his three-year-old niece to death while he was sexually molesting her. He was charged with first degree murder and aggravated indecent assault. At trial, the Commonwealth introduced evidence that the body of the victim was found in a plastic bag in a creek and that the victim died from unnatural causes. The Commonwealth did not present independent evidence of aggravated indecent assault before introducing the defendant's confession. We held that the confession was admissible as to both crimes because "the relationship between the two crimes is close and the policy underlying the *corpus delicti* rule has not been violated." *Id.* at 874.[16]

Appellant's final ground for invalidating his plea to the first count of IDSI is on the basis that the guilty plea colloquy was inadequate because it did not sufficiently define the nature and elements of the offense. He contends that the trial court failed to give understandable definitions of "forcible compulsion," "per os" and "deviate sexual intercourse." He concludes that he therefore did not enter a knowing, intelligent and voluntary plea to that offense. Appellant also argues that counsel was ineffective for failing to object to the inadequate colloquy.

As noted, to determine a defendant's actual knowledge of the implications and rights associated with a guilty plea, a court is free to consider the totality of the circum-

16. We recently reaffirmed the standard articulated in *Bardo* in *Commonwealth v. Taylor*, 831 A.2d 587 (Pa.2003), where we clarified that the two crimes charged need not share a common element in order to fall under the closely related exception to the *corpus delicti* rule.

stances surrounding the plea. *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582 (1999). We hold that the totality of the circumstances surrounding the entry of Appellant's guilty plea to the first count of IDSI demonstrate that his plea was knowing, intelligent and voluntary. At the colloquy, the court instructed Appellant as follows:

You are also charged at CC Number 9409095 with two counts of involuntary deviate sexual intercourse and abuse of corpse. It's alleged that on June 18th of 1994 in Allegheny County at Count 1, involuntary deviate sexual intercourse, that you did engage in deviate sexual intercourse per os or per anus with Shawn Hagan, age 12, who was not your spouse, by forcible compulsion or by threat of forcible compulsion.

You're charged at Count 2 with engaging in deviate sexual intercourse per os or per anus with Shawn Hagan, age 12, not your spouse, by forcible compulsion or threat of forcible compulsion.

You are charged at Count 3, abuse of corpse. That is that you, without authorization of law, treated the corpse of Shawn Hagan, age 12, in a way that said actor knew would outrage ordinary family sensibilities. As to the penalties, the deviate sexual intercourse, that is per mouth or per anus as charged at counts 1 and 2, they're felonies of the first degree. They are punishable each separately by a maximum penalty of 10 to 20 years in jail and/or a $25,000 time [sic]. I emphasize both separately, and the third count, abuse of corpse, is punishable in that it is a misdemeanor of the second degree, is punishable by up to two years in jail, one to two years in jail and/or a $5,000 fine.

Sir, do you understand the nature of the charges and the possible penalties on these related charges?

APPELLANT: Yes, I do, Your Honor.

Suppression Hearing/Guilty Plea Transcript at 60–62.

Following the colloquy, the prosecutor gave a detailed summary of the facts which included those supporting the first count of IDSI, *i.e.,* that while at a secluded area on the

riverfront Appellant pulled down the boy's clothing, and performed oral sex on him. Considering the fact that the court referred to the offenses as "per mouth and per anus as charged at counts 1 and 2," and because Appellant had previously plead guilty to the offense of IDSI and was incarcerated for that offense, we hold that he was aware of the elements of the crime. Accordingly, the trial court did not err in accepting his plea to the first count of IDSI. Appellant's ineffectiveness of counsel claims relating to the trial court's acceptance of his plea to the first count of IDSI were not presented at the evidentiary hearing and were not addressed by the trial court. Thus, these unpreserved claims of trial counsel ineffectiveness must be dismissed pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), without prejudice to Appellant's right to raise them in a PCRA petition.

Appellant next contends that the trial court erred in accepting his guilty plea to the second count of IDSI, based upon the anal sodomy that occurred after the strangulation. He argues that, at the time of the offense, one could not engage in deviate sexual intercourse with a corpse. *See Commonwealth v. Sudler*, 496 Pa. 295, 436 A.2d 1376 (1981) (penetration after a victim's death is not within the definition of the "forcible compulsion" subsection of the rape statute; the proper offense under such circumstances is abuse of corpse); *see also Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833, 847 (1985) (crimes of rape and indecent assault can only arise against living persons).[17] He also contends that the conviction fatally infected the penalty phase where the only aggravating circumstance was that the killing was committed while in the perpetration of a felony. Appellant maintains that the evidence was therefore insufficient to sustain the only aggravating circumstance and that therefore counsel was ineffective for advising Appellant to enter the plea.

**17.** The Legislature subsequently amended the IDSI statute in 1995, to provide that the term " 'forcible compulsion' includes, but is not limited to, compulsion resulting in another person's death, whether the death occurred before, during or after the sexual intercourse." 18 Pa.C.S. § 3123(b). As noted, the instant offenses occurred in 1994.

■ The Commonwealth concedes that at the time the charges were filed, Appellant should not have been charged with IDSI based upon the anal sodomy of the deceased victim. It argues, however, that the trial court's error in accepting the guilty plea to the second count of IDSI was harmless because the felony supporting the aggravating circumstance of committing the killing during the perpetration of a felony was the *first count* of IDSI, the oral sodomy that occurred prior to the strangulation.[18] The Commonwealth emphasizes that in the court below, it argued that the killing took place in the course of *a felony,* as opposed to multiple felonies. Moreover, the trial court imposed a sentence on the first count of IDSI, but did not impose sentence on the second count.

■ We agree. Because the plea to the first count of IDSI was properly accepted by the trial court and was supported by sufficient evidence, any error in accepting the plea to the second count of IDSI, for which no sentence was imposed, did not cause prejudice to Appellant. Had the invalid plea supported a *separate* aggravating circumstance, the process of balancing aggravating and mitigating circumstances would have been offset. That is not the case here. The invalidation of the guilty plea to the second count of IDSI did not invalidate the only aggravating circumstance found, *i.e.,* the commission of the killing during the perpetration of a felony. As Appellant was not prejudiced by the entrance of his plea, his related claim of ineffective assistance of counsel for advising him to plead guilty to the second count of IDSI also fails.

Having concluded that there are no reversible errors relating to the guilt phase, we now proceed to address Appellant's remaining penalty phase issues. Appellant first contends that

**18.** Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. *Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344, 350 (1999).

the trial court erred in permitting him to waive his right to a sentencing jury because the waiver colloquy was insufficient. He argues that the colloquy failed to inform him on the record that, pursuant to *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988), jurors need not be unanimous in finding mitigating circumstances. He concludes that the trial court's omission in this regard rendered his waiver of a sentencing jury unknowing, involuntary, and unintelligent. He maintains that trial counsel was ineffective for failing to object to the insufficient colloquy.

Under Pennsylvania law, a capital defendant tried without a jury in the guilt phase retains the right to a jury in the penalty phase of the trial unless he specifically waives that right without objection by the Commonwealth. 42 Pa.C.S. § 9711(b). In *Commonwealth v. O'Donnell,* 559 Pa. 320, 740 A.2d 198, 211 (1999), this Court adopted the following principles as applicable to a capital defendant's waiver of his right to be sentenced by a jury pursuant to 42 Pa.C.S. § 9711(b):

> Before a voluntary waiver may be accepted as knowing and intelligent, the on-record colloquy must show that the defendant fully comprehended the significance of the right being waived and must indicate that, at a minimum, the defendant knew the essential protections inherent in a jury trial as well as the consequences attendant upon a relinquishment of those safeguards.

*Commonwealth v. O'Donnell,* 740 A.2d at 212.

While we did not provide a mechanical listing of what must be included in a colloquy regarding a capital defendant's waiver to a penalty-phase jury, we held in *O'Donnell* that it was clear that the colloquy must be an on-record dialogue, which is calculated to insure the defendant comprehends the nature and significance of the right being waived. *Id.* at 213. At the very least, we held that the defendant should be asked if he understands that he has the right to be sentenced by a penalty-phase jury, whether any waiver to that right has been based on promises or coercion and if he understands that under Pennsylvania law a penalty-phase jury must render a unanimous verdict. *Id.*

■ The instant colloquy complied with these requirements. Trial counsel informed Appellant that he had a right to have his sentencing matter heard by twelve citizens, that the jury would have to find beyond a reasonable doubt that the Commonwealth had established any aggravating circumstances, and that the jury would determine whether the defense had presented mitigating factors by a preponderance of the evidence. Notes of Testimony, Sentencing Hearing dated February 2, 1995 at 7. He was also informed that the jury would have to be unanimous in finding beyond a reasonable doubt that the aggravating factors outweighed the mitigating factors and that the jury could render a verdict requiring Appellant to be put to death by lethal injection. Sentencing Hearing at 8, 9. Appellant indicated that he understood these rights. When asked whether he had been threatened or coerced into waiving his sentencing jury, Appellant responded in the negative and indicated that the decision was made of his own free will. Sentencing Hearing at 10. Appellant stated that he never suffered from any mental or physical illness or had any drugs or alcohol that would affect his ability to understand what was occurring. Sentencing Hearing at 11. Finally, Appellant agreed that he had enough time to speak with counsel regarding his decision to waive a sentencing jury and that he was satisfied that he fully understood the implications of waiving such right. Sentencing Hearing at 11–12.

Moreover, contrary to his assertions, Appellant was informed of the *Mills* protections. Trial counsel stated at the colloquy, "[t]hat any single juror who might not agree with the majority would cause that—cause the Court to have to impose a sentence of life." Sentencing Hearing at 9. Trial counsel further expressly testified at the evidentiary hearing that he had discussed with Appellant the function of a jury in a penalty proceeding and the fact that the jury need not be unanimous in finding a mitigating factor. Evidentiary Hearing at 147–148. Thus, the trial court did not err in permitting Appellant to waive his right to a sentencing jury and counsel was not ineffective for failing to object to a sufficient colloquy.

■ Appellant next contends that counsel was ineffective for failing to challenge the existence of the only aggravating circumstance found—that the defendant committed a killing while in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6). This issue was presented in Appellant's Revived Request for Evidentiary Hearing at "h," but was not pursued in his Pa.R.A.P.1925(b) statement of matters complained of on appeal. Thus, similar to the unpreserved claims of trial counsel ineffectiveness addressed at 69, supra, this claim was not addressed by the trial court and our decision in *Bomar* does not apply. Accordingly, this unpreserved claim of counsel ineffectiveness must be dismissed pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), without prejudice to Appellant's right to raise it upon PCRA review.

■ Appellant next contends that counsel was ineffective for failing to conduct an independent investigation into mitigation evidence, for failing to present a defense psychiatric expert and instead relying on a pre-sentence report prepared by a county probation officer that contained information prejudicial to Appellant.[19]

■ In evaluating claims that counsel was ineffective for failing to conduct a sufficient investigation into mitigation evidence, the applicable standard is as follows:

Counsel has a duty to undertake reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. See *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Where counsel has made a strategic decision after a thorough investigation of the law and facts, it is virtually

19. We summarily reject the contention that trial counsel was ineffective for submitting the pre-sentence report that contained prejudicial information. No prejudice resulted from the submission of the report because the trial judge did not consider any extraneous or otherwise improper information contained therein. *See* Trial Court opinion at 14–15; Sentencing Hearing at 2–4. Even if prejudicial information was considered by the trial court, a judge, as fact finder, is presumed to disregard inadmissible evidence and consider only competent evidence. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. See *Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066. As noted, an evaluation of counsel's performance is highly deferential, and the reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. See *id.* at 689, 104 S.Ct. at 2065. Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. See *Commonwealth v. Peterkin,* 511 Pa. 299, 319, 513 A.2d 373, 383 (1986), cert. denied, 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it. See *Commonwealth v. Howard,* 553 Pa. 266, 276, 719 A.2d 233, 238 (1998).

*Commonwealth v. Basemore,* 560 Pa. 258, 744 A.2d 717, 735 (2000).

Before considering the alleged deficiencies in trial counsel's investigation and introduction of mitigation evidence, we review the investigation he conducted and the mitigating evidence trial counsel presented. Initially, we note that trial counsel spoke with Appellant numerous times over the six-month period between arrest and trial and decided that entering guilty pleas to the offenses charged would establish mitigation by showing remorse and acceptance of responsibility. Evidentiary Hearing at 157. Trial counsel also obtained a letter from a former roommate of Appellant's who lived in Japan. Appellant was required to contact the friend through the United States Consulate and have the letter notarized by a consular officer. The letter addressed the nature of his six-year relationship with Appellant and the assistance Appellant provided the friend in obtaining his graduate degree. Trial counsel also sought to provide mitigation evidence from the pre-sentence report.

At the evidentiary hearing, trial counsel testified that there was nothing about the way Appellant conducted himself or the manner in which Appellant was able to communicate that caused counsel to believe that Appellant was in need of a psychiatric evaluation. Evidentiary Hearing at 94. Nevertheless, due to the nature of the crime, at the sentencing hearing, trial counsel presented the testimony of Dr. Christine Martone, the Chief Psychiatrist of the Allegheny County Behavior Clinic. Dr. Martone testified that she examined Appellant and diagnosed him with pedophilia. Sentencing Hearing at 114. She stated that at the time of the incident, Appellant was overtaken by a sexual urge, acted upon it, and when confronted with disclosure, panicked and attempted to kill the victim. Sentencing Hearing at 114–115. She went on to state that when the victim appeared to regain consciousness, Appellant felt that some supernatural situation was occurring and again panicked and succeeded in killing the boy. Sentencing Hearing at 115. Dr. Martone testified that the sexual impulse and ensuing panic constituted "mitigating circumstances." Sentencing Hearing at 115. She stated, "in my opinion his judgment was impaired and control was impaired at that time [when the murder was committed]." Sentencing Hearing at 15. Dr. Martone also testified that the fact that Appellant had been drinking all or part of a quart bottle of vodka may have had an impact on his judgment and impulse behavior. Sentencing Hearing at 116.[20]

Appellant contends that such investigation and presentation of mitigation evidence was insufficient. According to Appellant, an adequate investigation would have revealed that: Appellant was prematurely born to a twelve-year old girl and suffered from cardiac arrest within one hour of his birth, causing severe lack of oxygen to his brain; Appellant was

20. The court asked Dr. Martone whether she would describe the pedophilia to be an extreme mental or emotional disturbance. Dr. Martone responded, "[n]ot extreme." *Id.* at 134. When questioned by the court as to the relevance of Dr. Martone's testimony, trial counsel informed the court that it was relevant to the circumstances of the offense, which is included in the catchall mitigating circumstance at 42 Pa.C.S. § 9711(e)(8).

placed in foster care a few months after his birth; and Appellant suffered from serious mental illness. At the evidentiary hearing, appellate counsel presented the testimony of Dr. Ralph Tarter, who diagnosed Appellant with severe psychopathology including schizoid personality disorder and schizoaffective disorder. Evidentiary Hearing at 196.[21] Dr. Tarter opined that the lack of secure attachment and bond within the first months of life created a scenario consistent with Appellant's adult behavior. Evidentiary Hearing at 208–212. Dr. Tarter testified that he would have been available to testify at the penalty phase to both psychiatric mitigators, that Appellant was acting under extreme mental and emotional disturbance, 42 Pa.C.S. § 9711(e)(2), and that his capacity to appreciate the criminality of his conduct or to conform his conduct was substantially impaired, 42 Pa.C.S. § 9711(e)(3). Evidentiary Hearing at 223–224. Appellant maintains that the trial court specifically referenced the lack of psychiatric mitigation evidence when, upon imposition of the death sentence, the court stated, "Now, you were not diagnosed as having an extreme mental or emotional disturbance, therefore, I must conclude and hold you accountable for your actions." Notes of Testimony of Sentencing, dated February 7, 1995, at 4.

 As this claim appears to be of arguable merit, we must examine whether counsel had a reasonable basis for his performance. We reiterate that reasonableness in this context depends, in critical part, upon the information supplied by the defendant. *Commonwealth v. Basemore*, 744 A.2d at 735. As noted, trial counsel testified that Appellant displayed no overt psychotic behavior between the time of the arrest and trial.[22] Appellant also did not inform trial counsel of any

21. Dr. Tarter examined birthing records from Magee Women's Hospital, Allegheny County CYS records, and school records, and performed various psychological tests on Appellant in October of 1999. Dr. Martone did not examine these same records in making her diagnosis.

22. In fact, Dr. Tarter, upon whose testimony Appellant currently relies, testified that a mental condition may not be readily apparent from "casual conversation" or even psychiatric interviews. Evidentiary Hearing at 212–213.

mental impairment or of any birthing injury that would affect his mental stability at the time of the offense. Nevertheless, he presented psychiatric testimony in mitigation, albeit in support of the catchall mitigating circumstance. Trial counsel testified that he presented Dr. Martone of the Behavior Clinic instead of obtaining a "defense expert" because he believed that she would be "neutral" and because the Public Defender's Office lacked funds. Evidentiary Hearing at 109–110, 116–118, 122. We find Appellant's performance in this regard reasonable. Based on the information trial counsel possessed at the time, he was not ineffective for failing to find another psychiatric expert who would support additional mitigating factors. Thus, trial counsel will not be deemed ineffective for "failing to present mitigation evidence that he did not know existed." *Commonwealth v. Roderick Johnson*, 572 Pa. 283, 815 A.2d 563 (2002).[23]

Appellant's final claim is that he was constructively denied counsel in violation of the Sixth Amendment to the United States Constitution based upon the cumulative errors of trial

**23.** We further note that on cross-examination, Dr. Tarter admitted that his practice does not involve the diagnosis or treatment of schizophrenia, but focuses on teaching and research with a concentration in alcohol and substance abuse disorders. Dr. Tarter acknowledged that, by the time he examined Appellant, Appellant was aware of the purpose for the interview and testing. Evidentiary Hearing at 244. Regarding Appellant's alleged "psychotic break," Dr. Tarter testified that it occurred after the victim stated that he would tell his parents about the incident. Evidentiary Hearing at 244. Dr. Tarter admitted that the "panic" occurred because Appellant knew his actions were criminal and did not want to return to prison. Evidentiary Hearing at 244–245. Most significantly, Dr. Tarter testified that he agreed with Dr. Martone's opinion and only felt that she should have conducted clinical testing. Evidentiary Hearing at 253.

The trial court discounted Dr. Tarter's testimony, finding that "the credible evidence overwhelmingly supported the fact that [Appellant] possessed the specific intent to kill Shawn Hagan." Trial court opinion at 13. It went on to say that "[Appellant's] confession which detailed the events surrounding Hagan's death, the testimony of Dr. Christine Martone (See Notes of Penalty Hearing at 112–138), and the cross-examination testimony of Dr. Tarter, when considered together, established this fact to such a degree that we found that trial counsel was not ineffective for advising Appellant to plead guilty to first degree murder." *Id.*

counsel. He further cites the fact that in 1998 the County of Allegheny entered into a settlement agreement for violations of the Sixth Amendment right to counsel of indigents. Because we have determined that there were no errors warranting relief, Appellant's allegations of cumulative error fails. Moreover, Appellant has failed to demonstrate that the consent decree entered into by Allegheny County had any impact whatsoever on trial counsel's handing of this case.

Finally, pursuant to 42 Pa.C.S. § 9711(h)(3), this Court must affirm a sentence of death unless it finds that: "(i) the sentence of death was the product of passion, prejudice or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance specified in subsection (d)." 42 Pa.C.S. § 9711(h)(3). Here, as noted, the evidence was clearly sufficient to support the aggravating circumstance found by the trial court, that is, that the killing was committed while in the perpetration of a felony. 42 Pa.C.S. § 9711(d)(6). Moreover, after reviewing the record, we conclude that the sentence of death was not the product of passion, prejudice or any other arbitrary factor. 42 Pa.C.S. § 9711(h)(3).

Accordingly, we affirm the verdict and sentence of death.[24]

Justice SAYLOR files a concurring opinion.

Justice SAYLOR concurring.

I have no objection to the Court moving toward sanctioning a knowing, voluntary, and intelligent plea of guilty to the offense of first-degree murder, as a number of other jurisdictions permit. I also agree with the majority that the procedural irregularity involved in the common pleas courts acceptance of Appellants first-degree-murder plea, despite this Courts then-prevailing proscription against such pleas, does

24. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. See 42 Pa.C.S. § 9711(i).

not require the invalidation of Appellants plea on due process grounds. *Cf. Commonwealth ex rel. Kerekes v. Maroney*, 423 Pa. 337, 341–42 & n. 2, 223 A.2d 699, 701–02 & n. 2 (1966) (explaining that, because a guilty plea operates as a waiver of all constitutional, statutory, and judicially created safeguards ordinarily surrounding the adversary system, the defendant's specific plea to second-degree murder, although procedurally irregular, was relevant only to the extent it affected the voluntary nature of the plea itself). My only points of difference with the majority on the plea issue relate to various aspects of its rationale, for example, reliance on sufficiency-of-evidence review as an effective safeguard in the guilty plea context, *see* Majority Opinion at 62,[1] and characterization of Rule of Criminal Procedure 802 as intended to establish only a procedural alternative that a defendant may pursue in pleading guilty to murder. *See* Majority Opinion at 63.[2]

I also disagree with the majority's conclusion that trial counsel had a reasonable basis for relying on the pre-sentence report prepared by the Allegheny County probation office and the associated evaluation of Dr. Christine Martone, the chief psychiatrist of the Allegheny County Behavior Clinic, in lieu of an independent investigation into mitigation evidence. *See Commonwealth v. Meadows*, 567 Pa. 344, 368, 787 A.2d 312, 326 (2001) (Saylor, J., concurring) (collecting cases and observ-

---

1. In many cases, there will be no evidentiary record for the Court to review in the context of a guilty plea, which generally proceeds on the basis of the essential colloquy directed to ensuring the knowing, voluntary, and intelligent character of the plea. *See* Pa.R.Crim.P. 590 & Cmt.

2. Since Rule 802 was drafted in a landscape of plain, repeated, and categorical pronouncements by this Court proscribing guilty pleas to first-degree murder, *see, e.g., Commonwealth v. Appel*, 547 Pa. 171, 181 n. 3, 689 A.2d 891, 896 n. 3 (1997) ("In Pennsylvania, a defendant may not enter a guilty plea to murder in the first degree[;] [i]nstead, a defendant may plead guilty to murder generally, and the burden is then on the Commonwealth to prove that the offense meets the requirements of murder in the first degree." (citation omitted)); *Kerekes*, 423 Pa. at 340, 223 A.2d at 701; *Commonwealth v. Jones*, 355 Pa. 522, 525, 50 A.2d 317, 319 (1947); *Commonwealth v. Berkenbush*, 267 Pa. 455, 461, 110 A. 263, 265 (1920), I have difficulty accepting that it was designed to allow an alternative explicitly proscribed by case law.

ing that capital defense counsel is obliged to perform an adequate pre-trial investigation into potential mitigating evidence for use in a capital sentencing proceeding). While the majority emphasizes counsels observation that Appellant displayed no overt psychotic behavior between the time of the arrest and trial, and trial counsels proffer of Dr. Martone's testimony as mitigation, *see* Majority Opinion at 73, it offers little account for the limited scope of Dr. Martone's evaluation,[3] or its impact in terms of implicating further investigation into potential mental health mitigation. *Accord Averhart v. State,* 614 N.E.2d 924, 930 (Ind.1993) (finding capital defense counsel ineffective, *inter alia,* because he naively relied upon the system for generating pre-sentence reports to produce his mitigating evidence).

Ultimately, however, I agree with the majority that Appellant failed to establish the requisite prejudice, as the trial judge (who was himself the factfinder at the penalty hearing by virtue of Appellants jury waiver) considered Appellants mental health evidence at the post-sentence hearing and concluded that, had it been offered into evidence in the penalty proceeding, it nonetheless would not have affected the outcome.

I also join the majority in the balance of its reasoning and decision.

---

**3.** Dr. Martone's examination was limited to her dialogue with Appellant; she conducted no psychological testing or records review.