J-S24042-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DAVID WILLIAM PECK, | : | |
| | : | |
| Appellant | : | No. 3381 EDA 2014 |

Appeal from the Judgment of Sentence entered on October 27, 2014
in the Court of Common Pleas of Montgomery County,
Criminal Division, No. CP-46-CR-0005283-2013

BEFORE:  GANTMAN, P.J., ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 29, 2015**

David William Peck ("Peck") appeals from the judgment of sentence imposed following his conviction of one count each of recklessly endangering another person and simple assault, and two counts of harassment.[1] Additionally, Timothy Wile, Esquire *("Attorney Wile"),* Peck's counsel, has filed a Petition to Withdraw as counsel and an accompanying brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967).  We grant Attorney Wile's Petition to Withdraw and affirm Peck's judgment of sentence.

The trial court set forth the relevant factual and procedural history in its Opinion, which we adopt for purposes of this appeal.  ***See*** Trial Court Opinion, 1/27/15, at 1-6.

---

[1] ***See*** 18 Pa.C.S.A. §§ 2705, 2701(a)(1), 2709(a)(1), (4).

"When presented with an **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." **Commonwealth v. Garang**, 9 A.3d 237, 240 (Pa. Super. 2010) (citation omitted). Pursuant to **Anders**, when counsel believes an appeal is frivolous and wishes to withdraw from representation, he/she must do the following:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se,* or raise any additional points he deems worthy of this Court's attention.

**Commonwealth v. Edwards**, 906 A.2d 1225, 1227 (Pa. Super. 2006) (citation omitted). In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court addressed the second requirement of **Anders**, *i.e.*, the contents of an **Anders** brief, and required that the brief

> (1)  provide a summary of the procedural history and facts, with citations to the record;
>
> (2)  refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3)  set forth counsel's conclusion that the appeal is frivolous; and
>
> (4)  state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. "Once counsel has satisfied the [*Anders*] requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." *Edwards*, 906 A.2d at 1228 (citation omitted).

Here, Attorney Wile has complied with each of the requirements of *Anders*. Attorney Wile indicates that he conscientiously examined the record and determined that an appeal would be frivolous. Further, Attorney Wile's *Anders* brief comports with the requirements set forth by the Supreme Court of Pennsylvania in *Santiago*. Finally, the record includes a copy of the letter that Attorney Wile sent to Peck, advising him of his right to proceed *pro se* or retain alternate counsel and file additional claims, and stating Attorney Wile's intention to seek permission to withdraw. Accordingly, Attorney Wile has complied with the procedural requirements for withdrawing from representation, and we will conduct an independent review to determine whether Peck's appeal is wholly frivolous.

The *Anders* brief filed by Attorney Wile identifies the following issues for our review:

> 1. [Whether Peck's] convictions for simple assault, recklessly endangering another person, and harassment [are] supported by legally sufficient evidence?
>
> 2. [Whether] the Commonwealth disprove[d] [Peck's] self-defense claim by proof beyond a reasonable doubt?

*Anders* Brief at 4.

- 3 -

In his first claim, Peck asserts that his convictions of simple assault, recklessly endangering another person, and harassment were not supported by legally sufficient evidence. *Anders* Brief at 13. Peck contends that the domestic incident giving rise to his conviction did not occur as the victim, Melani Michelle Borrilez ("Borrilez"), portrayed it. *Id*. at 16.

The trial court addressed Peck's first claim, set forth the relevant law, and determined that it lacks merit. *See* Trial Court Opinion, 1/27/15, at 7-11. Based on our independent review of the evidence of record, we agree with and adopt the sound reasoning of the trial court, and conclude that this claim is frivolous. *See id*.

In his second claim, Peck contends that the Commonwealth failed to disprove his claim of self-defense by proof beyond a reasonable doubt. *Anders* Brief at 24. Peck asserts that Borrilez was the initial aggressor in the domestic incident, and that she came after him with the white-handled butcher knife. *Id*. at 29.

The trial court addressed Peck's second claim, set forth the relevant law, and determined that it lacks merit. *See* Trial Court Opinion, 1/27/15, at 11-13. Based on our independent review of the evidence of record, we agree with and adopt the sound reasoning of the trial court, and conclude that this claim is frivolous. *See id*.

Based on our independent determination that Peck's claims lack merit, we conclude that his appeal is wholly frivolous, and that Wile is entitled to withdraw as counsel.

Petition to Withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :
:
:      No. 5283-2013
vs.                  :
:      3381 EDA 2014
DAVID WILLIAM PECK        :

2015 JAN 27 PM 3:20

## OPINION OF THE COURT

Page, J.                                         *January 27, 2015*

Appellant appeals from the judgment of sentence entered in the Montgomery County Court of Common pleas, following his bench trial conviction for simple assault, recklessly endangering another person, and harassment on March 24, 2014. Appellant contends there was insufficient evidence for a finding of guilt. Because the evidence was legally sufficient to prove Appellant committed the charges brought against him and todisprove Appellant's claim of self-defense, this Court's conviction of Appellant should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On March 24, 2014, having waived his right to a jury trial, Appellant David William Peck was tried by the undersigned on charges of terroristic threats (18 Pa.C.S.A. § 2706), recklessly endangering another person ("REAP") (18 Pa.C.S.A. § 2705), simple assault (18 Pa.C.S.A. § 2701(a)(1)), and harassment (18 Pa.C.S.A. §§ 2709(a)(1) and (4)). The parties put forth the following evidence:

Melani Michelle Borrilez, Appellant's on-again-off-again girlfriend, testified that she became pregnant with Appellant's child in May of 2013, a fact of which Appellant was aware. Trial Tr. 12:24–13:6. On June 3, 2013, Appellant asked Ms. Borrilez to clean his apartment



while he was at work. While she was there, the couple started arguing via text message about her car being parked in his driveway and about Appellant's wife. Appellant repeatedly asked that Ms. Borrilez leave his apartment before he returned home. Ms. Borrilez refused his request. She stated to the court that it was normal during the course of an argument to be told to leave but return shortly thereafter. Trial Tr. 42:23–25. Ms. Borrilez began to pack her things. Appellant returned home at approximately 4:00pm, and the argument continued. Ms. Borrilez testified that during the argument she "went into the bedroom and started finishing packing and I saw two porn DVDs that I bought him so I came out and was in the dining room and started cutting those up." Trial Tr. 18:9–12.

Appellant responded to these actions by putting Ms. Borrilez in a choke hold. She could not breathe and she could not talk. He then flung her to the floor, where she hit her forehead, and "everything went black." Trial Tr. 19:17. Ms. Borrilez testified that "I was scared that if he didn't let me go he was going to kill me." Trial Tr. 19:22–23.

Ms. Borrilez then retreated to the bedroom to continue packing. She testified that Appellant pursued her and, facing her, wrapped his hands around her neck. Trial Tr. 21:20–25. When he let go, she returned to the dining room, where, she claimed, he punched her in the stomach, causing her to run to the bathroom to vomit. Trial Tr. 23:5–23. Appellant then seized some of Ms. Borrilez's packed items, including her cellular telephone, which he snapped into two pieces, claiming, as Ms. Borrilez put it, "I was on his plan so it's his phone anyways." Trial Tr. 25:4–5. Returning into the house, Appellant retrieved a white-handled butcher's knife, held it close to Ms. Borrilez's stomach,[1] and said, per Ms. Borrilez, "that he was going to kill my fucking baby." Trial Tr. 25:7–13. Ms. Borrilez admits to have been "instigating him [sic]" at that

---

[1] Ms. Borrilez testified that Appellant was pointing it at her stomach from a distance of 3-4 feet. Trial Tr.25:16–20.

2

point, in an attempt to "act strong." Trial Tr. 27:9–10. Appellant then discarded the knife and left the premises.

Ms. Borrilez stated that she did not telephone the police because she "was scared. I didn't know what he was going to do." Trial Tr. 29:2–3. She went to a hospital to attend to her injuries,[2] which included a bleeding "brush burn" on her forehead and bruises on her legs and neck. Trial Tr. 29:15–17. Ms. Borrilez subsequently filed for a Protection from Abuse Order ("PFA") against Appellant.[3]

Police were called to the hospital. Officer Thomas A. Godin, Sr., the Commonwealth's second witness, testified that he responded to the hospital and interviewed Ms. Borrilez, who was "extremely emotional," "crying," and "kind of shaking." Trial Tr. 64:8–9. He stated that her visible wound included a laceration to the forehead, a mark and redness on her knee and hip, and red petechial hemorrhaging[4] around her neck. Trial Tr. 64:14–18. The officer testified that while photos had been taken of Ms. Borillez's injuries, they were, for an undisclosed reason, not available for trial. Trial Tr. 63:23–64:17.

From the hospital, Officer Godin proceeded to Appellant's apartment and took Appellant into custody. With the consent of Appellant's roommate, Officer Godin searched the apartment and retrieved a white-handled knife.[5] The Officer also observed broken "CD's"[6] in and around the trashcan, and half of a broken cellular telephone.

At the stationhouse, Appellant was informed of his Miranda rights and signed a form waiving them. Commonwealth's Ex. 4. Officer Godin testified that before Appellant was

---

[2] Ms. Borrilez testified that she drove to a hospital that was closer to where she was residing, rather than the nearest hospital to the incident. Trial Tr. 28:12–20.

[3] On cross-examination, it was made apparent that Ms. Borrilez and Appellant have a colorful history which includes multiple PFA hearings and romantic reconnections subsequent to the instant event.

[4] The witness claimed he observed that there were broken capillaries underneath the skin. Trial Tr. 68:12-13.

[5] The Commonwealth did not produce the knife at trial, supposedly because it was never seized. Closing Arg. Tr. 14:19–15:11.

[6] The Court acknowledges that CD's are fairly indistinguishable from DVD's in their external appearance.

3

transported to a holding facility, Appellant made an unsolicited statement in his presence that "he and Ms. Borrilez were in a toxic relationship and that he usually chokes her." Trial Tr. 76:20–22.

The medical records, entered into evidence by the Commonwealth, were contradictory regarding the injuries Ms. Borrilez's sustained to her neck and abdomen. *See* Commonwealth's Ex. 1. The "Emergency Provider Record" focused on the abrasion on her head and her pregnant status – there are checkmarks indicating only that her neck was "non-tender," "painless ROM," and "trachea midline," and that her abdomen was "non-tender," "no organomegaly," and "no distention." Commonwealth's Ex. 1 at 3. On the other hand, the "Triage Assessment 2," found on pages two and three of the "ED Summary," state that Ms. Borrilez had bruises on her neck and was punched in the abdomen, as well as having an abrasion to her forehead and left knee. Commonwealth's Ex. 1 at 8–9.

The Commonwealth also introduced into evidence a portion of the Incident of Abuse form which Ms. Borrilez submitted when applying for a PFA, Commonwealth's Ex. 2, and the statement she gave to the police on the day of the incident, Commonwealth's Ex. 3. Appellant pleaded guilty to robbery in 2002, and a certified copy of the disposition order was entered as the Commonwealth's final exhibit. Commonwealth's Ex. 5.

Appellant's testimony regarding the events was, not surprisingly, different. Appellant testified that when he returned home, he sat on his couch and continued to ask Ms. Borrilez to leave, and that she slapped him across the face two or three times. Trial Tr. 97:13–1, 98:3–5. Appellant laughed, enraging Ms. Borrilez, who began to cut the DVD's. Appellant then grabbed a DVD himself, ripped it, and threw it in the trash. Ms. Borrilez hit Appellant on the chest and continued packing. Trial Tr. 99:3–4. Appellant took her bag outside and snapped her cellular

4

telephone in half. Appellant testified that Ms. Borrilez had smashed the screen the week prior, and that the telephone was on his payment plan. Trial Tr. 99:6–11.

Ms. Borrilez returned inside, at which point Appellant began yelling at her to leave. Appellant testified that Ms. Borrilez then "grabbed the knife[7] and came at me."[8] Trial Tr. 99:17–18. Appellant said that he let her approach and cut him, because "I'm not scared of her." Trial Tr. 114:19–20; *see also* Trial Tr. 109:18–23 (Appellant agreeing that he was not afraid of Ms. Borrilez because he "thought she was being ridiculous."). Appellant testified that he received a superficial cut on his arm, which was photographed after the event.[9] Trial Tr. 99:20–22.

Appellant then grabbed her by the wrist, causing the knife to drop, and "flipped her around and put her in like the restraint position[10] and tried to escort her out of the house." Trial Tr. 99:22–24. Appellant testified that he was able to restrain her "because I'm a lot bigger than her." Trial Tr. 108:7–8. Ms. Borrilez continued "swinging" at Appellant until she "wiggled out." Trial Tr. 99:24–100:3. Appellant picked up the knife. Ms. Borrilez said "Don't kill my baby. Don't kill my baby," to which Appellant responded "Are you kidding me? I don't want to kill you. I don't want to kill the baby." Trial Tr. 100:4–8. Appellant threw the knife on the couch. Appellant testified that he was laughing throughout this episode. Trial Tr. 109:15–17. Appellant also denied having punched Ms. Borrilez in the stomach Trial Tr. 101:21–22. They both walked out of the house, but Ms. Borrilez returned inside. Eventually, with Appellant watching from his wife's nearby driveway, Ms. Borrilez left the premises. Appellant did not enter any exhibits into evidence.

---

[7] Appellant testified that it was a twelve-inch bread knife. Trial Tr. 107:15–16, 109:2.

[8] Appellant testified that Ms. Borrilez retrieved the knife and walked over to Appellant before cutting him, covering a distance of seventeen feet. Trial Tr. 110:8–11.

[9] The alleged photographs were presumably part of the same set of photographs that were not produced by the Commonwealth for trial.

[10] Appellant testified that this included an arm around her neck. Trial Tr. 108:17–20.

5

At the conclusion of the bench trial, Appellant was found guilty by the undersigned of the following offenses: REAP (18 Pa.C.S.A. § 2705), Simple Assault (18 Pa.C.S.A. § 2701(a)(1)), and two counts of Harassment (18 Pa.C.S.A. §§ 2709(a)(1),(4)). He was found not guilty of Terroristic Threats (18 Pa.C.S.A. § 2706). Accordingly, on October 27, 2014, Appellant was sentenced to nine to twenty-three months imprisonment, along with two years of consecutive probation and one year of concurrent probation. Appellant filed no post-sentence motions, but filed notice of the instant appeal on November 26, 2014.

## ISSUES

In his Concise Statement of Errors Complained of on Appeal, Appellant asserts the following:

Appellant Peck's convictions for the offences of Simple Assault, Recklessly Endangering Another Person (REAP), and (2) counts of Harassment are not supported by legally sufficient evidence in that:

a. The altercation that occurred between Appellant and Melani Borrilez on 3 June 2013 arose out of a domestic dispute and involved mutual combat between Appellant and Ms. Borrilez;

b. Appellant Peck asserts that the evidence established that Ms. Borrilez was the initial aggressor in that altercation, not Appellant;

c. Appellant Peck properly raised the issue of self-defence as a justification for his actions with respect to Mr. Borrilez;

d. The Commonwealth failed to disprove by evidence beyond a reasonable doubt Appellant Peck's claim of self-defence;

e. The Commonwealth failed to produce sufficient evidence of Appellant's mens rea to satisfy the intent element of the offences of Simple Assault, REAP, and Harassment.

6

This Court has condensed the above issues to (1) Was the finding that Appellant had the requisite mental intent for each offense supported by legally sufficient evidence? and (2) Was the finding that Appellant did not act in self-defense supported by legally sufficient evidence?[11]

## STANDARD OF REVIEW

Evidentiary sufficiency presents a question of law. Therefore, the appellate court's standard of review is de novo, and its scope of review is plenary. *Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006). The appellate court must determine whether "the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Fears*, 836 A.2d 52, 58–59 (Pa. 2003). The Commonwealth may prove all elements beyond a reasonable doubt through the use of wholly circumstantial evidence. *Id.* The evidence is sufficient "unless the proof relied upon for a conviction is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Rawles*, 462 A.2d 619, 622 (Pa. 1983). An arrest of judgment based on insufficiency of the evidence will invoke double jeopardy, shield an appellant from retrial, and effectively result in an acquittal.[12] *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

---

[11] Appellant properly challenges the legal sufficiency of the evidence for the first time on appeal, pursuant to Rule 606 of the Pennsylvania Rules of Criminal Procedure.

[12] Had Appellant challenged the weight, rather than the sufficiency, of the evidence, the standard on review would be abuse of discretion, and the remedy would be a new trial. *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Appellant, however, has waived this challenge by failing to raise it before the trial court. Pa. R. Crim. P. 607.

7

## ANALYSIS

**I.**   **There was sufficient evidence to find beyond a reasonable doubt that Appellant had the requisite mental intent to commit Simple Assault, REAP, and Harassment.**

A. Simple Assault

A person can be properly found guilty of simple assault when the Commonwealth proves beyond a reasonable doubt that he "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to another" 18 Pa. Cons. Stat. Ann. § 2701(a)(1). Appellant has challenged only the sufficiency of evidence surrounding the element of mens rea. Therefore, this Court focuses its analyses on the sufficiency of the evidence that Appellant acted intentionally, knowingly, or recklessly.

The Pennsylvania Crimes Code defines each of the possible mental states for simple assault in section 302. It states that a person acts "intentionally" when "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). Section 103 further states that the words and phrases "with intent," "designed," and "with design" have the same meaning. 18 Pa.C.S.A. § 103. A person acts "knowingly" when "he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2)(ii). Finally, a person acts "recklessly" when

> he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Viewing the evidence in the light most favorable to the Commonwealth, a reasonable inference can be drawn that the testimony offered by Ms. Borrilez was credible and that the facts

8

of the case occurred as she presented them. While photographs of the injuries were regrettably not before the court, and the medical records inconclusive on the extent of her injuries, Officer Godin corroborated that he observed that Ms. Borrilez had suffered a head wound and severe neck abrasions. Neither of these injuries is explicable given Appellant's testimony, which did not include how Ms. Borrilez had hit her head, and which described his choking of Ms. Borrilez as a "restraining position" performed from behind and executed with his arm rather than his hands. Appellant could also lose credibility with the fact-finder given his criminal history, his story that he allowed Ms. Borrilez to cut him, and, of course, his statement in the presence of Officer Godin that he "usually" chokes Ms. Borrilez.[13]

Presuming the situation unfolded as described in Ms. Borrilez's testimony, Appellant at the very least acted recklessly in his encounter with Ms. Borrilez. Appellant placed Ms. Borrilez in a choke-hold from behind, causing her to possibly lose consciousness and her head to strike the ground and bleed. He choked her from the front, to the extent that she had visible bruises hours after the encounter. He punched her in the stomach with enough force to make her vomit. Appellant's actions constituted a gross deviation from the standard of conduct that a reasonable person would observe in Appellant's situation (i.e., when having an argument with one's girlfriend where one does not feel physically threatened).

Therefore, when viewing the evidence admitted at trial and all the reasonable inferences drawn from therein in the light most favorable the Commonwealth, the evidence was sufficient

---

[13] In should be noted that in a case such as this, where there is conflicting testimony between the only two eye-witnesses, there is often no "hard evidence" to accompany the testimony. The conclusions drawn by the fact-finder may hinge on the circumstantial evidence, such as a third party's corroboration of the victim's wounds. *See Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) ("[T]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence, coupled with the reasonable inferences drawn therefrom, overcomes the presumption of innocence.") (quoting *Commonwealth v. Stays*, 40 A.3d 160, 167 (Pa. Super. 2012)). Conclusions drawn by the fact-finder as to the credibility of the witnesses are a measure of the weight of the evidence and are therefore not to be questioned during a challenge to the sufficiency of the evidence. *Id.*

to enable a fact-finder to conclude beyond a reasonable doubt that Appellant had the requisite mental intent to commit simple assault. *See, e.g., Commonwealth v. Wright,* 832 A.2d 1104, 1110 (Pa. Super. 2003) (finding that the evidence "plainly satisfies the standard for sufficiency" for a conviction of aggravated assault and recklessly endangering another person where the appellant's testimony about the shooting contradicted that of the victim's and two eye-witnesses).

B. REAP

A person can be found guilty of REAP when the Commonwealth proves beyond a reasonable doubt that he "recklessly engage[d] in conduct which place[d] or may [have] place[d] another person in danger of death or serious bodily injury." 18 Pa. C.S.A. § 2705. As stated above, viewing the evidence in the light most favorable to the Commonwealth, it is reasonable to assume the scene occurred just as Ms. Borrilez testified. The fact-finder could easily infer that when Appellant punched Ms. Borrilez in her abdomen, knowing that she was pregnant, he consciously disregarded a substantial and unjustifiable risk that he may have placed her in danger of death or serious bodily injury. Similarly, when Appellant choked Ms. Borrilez to the point of losing consciousness, he risked causing her serious brain injury which can result from a lack of oxygen. Therefore, the evidence was sufficient to enable a fact-finder to conclude beyond a reasonable doubt that Appellant had the requisite mental intent to commit REAP.

C. Harassment

A person can be found guilty of harassment, as charged, when the Commonwealth proves beyond a reasonable doubt that the person, "with intent to harass, annoy or alarm another, the person . . . strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same; . . . [or] communicates to or about such other person any

10

lewd, lascivious, threatening or obscene words, language, drawings or caricatures." 18 Pa.C.S.A.

§§ 2709(a)(1), (4). An intent to harass may be inferred from the totality of the circumstances.

*Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013), *reargument denied* (Sept. 27, 2013).

Taking Ms. Borrilez at her word, when Appellant wrapped his hands around her throat or

brandished a knife and threatened their unborn child, a fact-finder could reasonably conclude that

it was his design to harass, annoy, or alarm her. The totality of the circumstances, including the

escalating violence in the scenario and Appellant's statement before Officer Godin, indicate that

it was Appellant's conscious objective to communicate threatening words to Ms. Borrilez. The

evidence was sufficient to find beyond a reasonable doubt that Appellant had the requisite mental

intent to commit harassment.

**II.     There was legally sufficient evidence to find beyond a reasonable doubt that
Appellant did not act in self-defense.**

Section 505 of the Pennsylvania Crimes Code outlines when it is justifiable to use force

against another person in the interest of self-protection.[14] *See* 18 Pa. C.S.A. § 505. A defendant

---

[14] § 505. Use of force in self-protection
(a) Use of force justifiable for protection of the person.—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
(b) Limitations on justifying necessity for use of force. . . .
    (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:
        (i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or
        (ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.
    (2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

11

has no burden to prove he acted in self-defense. *Commonwealth v. Smith*, 97 A.3d 782, 786 (Pa. Super. 2014). A defendant's only duty is to present some evidence that would support a finding of self-defense by the fact-finder. *Id.* at 787.

The Commonwealth carries the burden to prove beyond a reasonable doubt that the defendant was not acting in self-defense. *Id.* at 787. The Commonwealth can do so by establishing either that: "1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety." *Id.* The defendant must have had both a subjective belief that he was in imminent danger, and an objectively reasonable belief that the use of force was necessary to protect against death or serious bodily injuries. *Id.* The reasonableness of a defendant's belief can be determined by considering such factors as "whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident." *Id.* at 788. The defendant also must not have "used more force than reasonably

---

(i) The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; . . .
(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.
(2.2) The presumption set forth in paragraph (2.1) does not apply if:
(i) the person against whom the force is used has the right to be in or is a lawful resident of the dwelling, residence or vehicle, such as an owner or lessee; . . .
(2.5) Unless one of the exceptions under paragraph (2.2) applies, a person who unlawfully and by force enters or attempts to enter an actor's dwelling, residence or occupied vehicle or removes or attempts to remove another against that other's will from the actor's dwelling, residence or occupied vehicle is presumed to be doing so with the intent to commit:
(i) an act resulting in death or serious bodily injury; or
(ii) kidnapping or sexual intercourse by force or threat. . . .
(3) Except as otherwise required by this subsection, a person employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used, without retreating, surrendering possession, doing any other act which he has no legal duty to do or abstaining from any lawful action.
18 Pa. C.S.A. § 505.

12

necessary to protect against death or serious bodily injury." *Id.* Finally, the defendant "must be free from fault in provoking or escalating the altercation that led to the offense." *Id.*

Viewing the evidence in the light most favorable to the Commonwealth, the fact-finder can take Ms. Borrilez at her word. *See id.* ("The complainant can serve as a witness to the incident to refute a self-defense claim.") If Appellant was the sole aggressor, there was no need for him to defend himself, and Appellant's self-defense argument fails before it begins.

Even considering Appellant's testimony to be true—which is not required during a challenge to the sufficiency of the evidence or to rebut a claim of self-defense[15]—Appellant testified that he was not scared of Ms. Borrilez, that he was much larger than herself, and that he was laughing throughout the incident. Appellant cannot now claim that he had a subjective belief that he needed to use force to protect himself from death or serious bodily injuries. Therefore, there was sufficient evidence to find beyond a reasonable doubt both that Appellant did not act reasonably in this situation and that Appellant escalated the argument into a physical altercation.

---

[15] *See id.* ("Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim.") (quoting *Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008)); *see, e.g. Commonwealth v. Brown*, 648 A.2d 1177, 1182 (Pa. 1994) ("Appellant's attack on the sufficiency of the evidence is, in essence, a spurious claim that if his version of events were given credence, he killed in self-defense. In view of the conflicting physical evidence and expert testimony, and in view of the inconsistency of appellant's accounts, it is understandable that the jurors did not credit appellant's testimony. There was more than sufficient evidence to prove every element of the offense and to disprove the self-defense claim beyond a reasonable doubt.")

13

## CONCLUSION

For all of the aforementioned reasons, this Court's order should be affirmed.

BY THE COURT:

_____
GARRETT D. PAGE,                    J.

Copies of the above Opinion
Mailed on **1-27-2013**
**By First-Class Mail:**
David Peck, Appellant
**By Inter-Office Mail:**
Anne Schools, Court Administration
Montgomery County District
  Attorney- Appellate Division
Timothy Peter Wile, Assistant Public Defender

Judicial Secretary

14