J-A03027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EDWARD FEIERSTEIN | |
| Appellant | No. 1017 EDA 2015 |

Appeal from the Judgment of Sentence March 30, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0001241-2012

BEFORE:  GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.:                    **FILED MARCH 01, 2016**

Appellant, Edward Feierstein, appeals from the March 30, 2015 judgment of sentence of twenty-three months of intermediate punishment, with the first thirty days on house arrest and electronic monitoring, followed by five years' probation, imposed after the trial court convicted Appellant of insurance fraud and perjury.[1]  After careful review, we affirm on the basis of the trial court's June 12, 2015 opinion.

The trial court recited the relevant factual and procedural history as follows.

> On May 13, 2006, [Appellant] was driving home from Germantown Cricket Club when his car was struck from behind.  The driver of the second

---

[1] 18 Pa.C.S.A. §§ 4117(a)(2) and 4902, respectively.

car was insured by Chubb Indemnity Insurance Co. ("Chubb"). Two days after the accident, [Appellant] filed a claim with Chubb seeking reimbursement for his bodily injuries. On February 1, 2008, nearly two years later, [Appellant] filed suit [] for $125,000 against Chubb's insured, seeking damages for his medical bills and for his pain and suffering. Specifically, [Appellant] complained of the re-tear of the rotator cuff of his right shoulder.

Chubb assumed defense of the action and hired a private investigation firm, Stumar Investigations, to conduct surveillance to determine the extent of [Appellant's] injuries. In August and September of 2008, one of Stumar's investigators, Brian Foster, recorded video footage of [Appellant] at Aquatic Fitness Center in Bala Cynwyd and at Germantown Cricket Club in Philadelphia on six different occasions. [Appellant] was seen stretching, exercising on an elliptical machine and a weight-lifting machine, and on at least two of the dates, playing tennis.

On January 28, 2009, Chubb's attorney, Carol Comeau, took [Appellant's] deposition in preparation for the civil suit. Unaware of the surveillance showing the contrary, [Appellant] stated during the deposition that he had not played tennis at all since the accident, that he had not worked out in any gyms since the accident, that the only exercise equipment he had used since the accident was his in-home treadmill, that he attends Germantown Cricket Club only for meals, and that he can no longer serve overhand. In the weeks following the deposition, [Appellant] was not made aware of the surveillance footage, although Chubb had provided [Appellant's] attorney with a copy. [Appellant] continued to pursue his suit until withdrawing it on July 12, 2011.

On December 15, 2011, a criminal complaint was filed against [Appellant], charging him with insurance fraud (18 Pa.C.S.A. § 4117), perjury (18 Pa.C.S.A. § 4902), attempted theft by deception (18 Pa.C.S.A. § 901 with § 3922(a)), and false swearing

(18 Pa.C.S.A. § 4903).[1] [Appellant] filed "Defendant's Amended and Superseding Omnibus Pre-Trial Motion" on December 28, 2012, which argued, amongst other things, that the charge of insurance fraud was barred by the statute of limitations, and that the video surveillance should be suppressed at trial. A hearing on the motion was held on January 11, 2013, before the Honorable Joseph A. Smyth. Judge Smyth denied [Appellant's] motion on February 25, 2013.

[Appellant] acted pro se at his bench trial [] on November 3, 4, 5, and 6, 2014.[2] During trial, [Appellant] renewed his objection to the video surveillance, and also objected to the introduction of the attendance records of Aquatic Fitness Center. (These records showed all the dates between January 1, 2006, and January 26, 2009, on which [Appellant] had entered the gym. Without obtaining a subpoena, Special Agent Mark Sabo of State Attorney General's office had requested the records from Aquatic Fitness Center, and the records were subsequently provided.) [Appellant's] motions were denied and the evidence was admitted.

At the conclusion of the trial, the [trial court] found [Appellant] guilty of insurance fraud and perjury. [Appellant] was sentenced on March 20, 2015, to twenty-three months of intermediate punishment, the first thirty days of which were to be spent on house arrest with electronic monitoring, in addition to five years of consecutive probation, three years of concurrent probation, $1,000 in restitution, and the costs of prosecution. [Appellant] filed a post-sentence motion on March 23, 2015.

[1] The false swearing charge was later dropped.

[2] The pro se representation occurred after th[e trial c]ourt allowed two other attorneys, both privately retained, leave to withdraw their appearance and representation.

Trial Court Opinion, 6/12/15, at 1-3 (footnotes in original).

On March 30, 2015, the trial court modified Appellant's sentence and ordered Appellant "to serve the first thirty days of his Intermediate Punishment as house arrest with electronic monitoring." Order, 3/30/15. The trial court otherwise denied Appellant's post-sentence motion. Appellant filed a timely appeal April 13, 2015.[2]

On appeal, Appellant presents four issues for our review.

1. Was the evidence insufficient as a matter of law to support [Appellant's] convictions for perjury and insurance fraud, where the Commonwealth failed to prove the element of materiality?

2. Even if the evidence were sufficient to support [Appellant's] convictions, were the guilty verdicts nevertheless against the weight of the evidence?

3. Should the trial court have suppressed video, photographic, and documentary evidence obtained in violation of [Appellant's] Fourth Amendment rights?

4. Should this matter be remanded for a hearing on after-discovered evidence?

Appellant's Brief at 5.

In summarizing his four issues on appeal, Appellant first asserts that the Commonwealth "failed to prove the element of materiality" with respect to his convictions, stating, "all the Commonwealth proved here is that Chubb effectively knows how to spring a perjury trap." Appellant's Brief at 10. Appellant vigorously argues that the Commonwealth's own evidence

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

demonstrating Appellant's mistaken deposition testimony was material to nothing. *Id.* at 13. Appellant additionally assails the weight of the evidence and says, "[i]t is uncontested that at the time [Appellant] gave his deposition testimony, multiple ailments caused him to be confused, and as such, incapable of forming the requisite intent." *Id.* at 10. Appellant further contends that the "video, photographic, and documentary evidence obtained in this case should have been suppressed as [Appellant's] reasonable expectation of privacy in those items was violated." *Id.* Finally, Appellant maintains "at a minimum, [the Superior Court] should remand this case for a hearing on after discovered evidence pursuant to Pa.R.Cr.P. 720, as a key witness has recanted and corrected his testimony from trial." *Id.*

We note the statutory definitions of insurance fraud and perjury as follows.

> § 4117. Insurance fraud
>
> **(a) Offense defined.**-- A person commits an offense if the person does any of the following:
>
> …
>
> (2) Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa.C.S.A. § 4117.

> § 4902. Perjury

> **(a) Offense defined.**--A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

*Id.* § 4902.

We are further mindful of our appellate standards of review. In examining Appellant's first issue challenging the sufficiency of the evidence, we are bound by the following.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not reweigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact[,] while passing on the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Yong*, 120 A.3d 299, 311 (Pa. Super. 2015) (citation omitted).

As to Appellant's second issue challenging the weight of the evidence, we recognize that a challenge to the weight of the evidence "concedes that the evidence is sufficient to sustain the verdict, but seeks a new trial on the ground that the evidence was so one-sided or so weighted in favor of acquittal that a guilty verdict shocks one's sense of justice." *In re J.B.*, 106 A.3d 76, 95 (Pa. 2014) (citation omitted). "A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court." *Commonwealth v. Weathers*, 95 A.3d 908, 910-911 (Pa. Super. 2014), *appeal denied*, 106 A.3d 726 (Pa. 2015), *citing Commonwealth v. Diggs*, 949 A.2d 873, 879 (Pa. 2008). Therefore, on appeal, the reviewing court "reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence." *Id.* "A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses." *Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (citation and internal quotation marks omitted), *appeal denied*, 125 A.3d 1198 (Pa. 2015). "[O]nly where the facts and inferences disclose a *palpable abuse of discretion* will the denial of a motion for a new trial based on the weight of the evidence be upset on appeal." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (emphasis in

original; citation omitted), *cert. denied*, **Morales v. Pennsylvania**, 135 S. Ct. 1548 (2015).

Our standard of review from an order denying a suppression motion is as follows.

> [W]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

**Commonwealth v. Russo**, 934 A.2d 1199, 1203 (Pa. 2007) (citation omitted).

Finally, in his fourth issue Appellant seeks relief based on after-discovered evidence, but failed to raise this claim in his March 23, 2015 post-sentence motion. We therefore agree with the trial court that Appellant's proper recourse for this claim is with collateral review pursuant to the Post-Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546. Trial Court Opinion, 6/12/15, at 17; **see also** Pa.R.A.P. 302(a) (issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

Having reviewed Appellant's issues, in conjunction with the foregoing facts of record and pertinent legal authority, we conclude that the Honorable Garrett D. Page, sitting as the trial court, has authored a comprehensive opinion which thoroughly discusses Appellant's claims, such that further commentary by this Court would be redundant. In sum, Appellant's first

three issues are without merit, and his fourth issue is not properly before us on direct appeal. Accordingly, we affirm Appellant's judgment of sentence on the basis of the trial court's June 12, 2015 opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/1/2016

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : 
:
:
:      No. 1241-2012
vs. :
:
:      1017 EDA 2015
EDWARD FEIERSTEIN :

## OPINION OF THE COURT

Page, J.                                                 *June 12, 2015*

### FACTS AND PROCEDURAL HISTORY

On May 13, 2006, Defendant Edward Feierstein was driving home from Germantown Cricket Club when his car was struck from behind. The driver of the second car was insured by Chubb Indemnity Insurance Co. ("Chubb"). Two days after the accident, Defendant filed a claim with Chubb seeking reimbursement for his bodily injuries. On February 1, 2008, nearly two years later, Defendant filed suit against for $125,000.00 against Chubb's insured, seeking damages for his medical bills and for his pain and suffering. Specifically, Defendant complained of the re-tear of the rotator cuff of his right shoulder.

Chubb assumed defense of the action and hired a private investigation firm, Stumar Investigations, to conduct surveillance to determine the extent of Defendant's injuries. In August and September of 2008, one of Stumar's investigators, Brian Foster, recorded video footage of Defendant at Aquatic Fitness Center in Bala Cynwd and at Germantown Cricket Club in Philadelphia on six different occasions. Defendant was seen stretching, exercising on an elliptical machine and a weight-lifting machine, and on at least two of the dates, playing tennis.

On January 28, 2009, Chubb's attorney, Carol Comeau, took Defendant's deposition in preparation for the civil suit. Unaware of the surveillance showing the contrary, Defendant stated

during the deposition that he had not played tennis at all since the accident, that he had not worked out in any gyms since the accident, that the only exercise equipment he had used since the accident was his in-home treadmill, that he attends Germantown Cricket Club only for meals, and that he can no longer serve overhand. In the weeks following the deposition, Defendant was not made aware of the surveillance footage, although Chubb had provided Defendant's attorney with a copy. Defendant continued to pursue his suit until withdrawing it on July 12, 2011.

On December 15, 2011, a criminal complaint was filed against Defendant, charging him with insurance fraud (18 Pa. C.S.A. § 4117), perjury (18. Pa. C.S.A. § 4902), attempted theft by deception (18 Pa. C.S.A. § 901 with § 3922(a)), and false swearing (18 Pa. C.S.A. § 4903).[1] Defendant filed "Defendant's Amended and Superseding Omnibus Pre-Trial Motion" on December 28, 2012, which argued, amongst other things, that the charge of insurance fraud was barred by the statute of limitations, and that the video surveillance should be suppressed at trial. A hearing on the motion was held on January 11, 2013, before the Honorable Joseph A. Smyth. Judge Smyth denied Defendant's motion on February 25, 2013.

Defendant acted pro se at his bench trial before the undersigned on November 3, 4, 5, and 6, 2014.[2] During trial, Defendant renewed his objection to the admission of the video surveillance, and also objected to the introduction of the attendance records of Aquatic Fitness Center. (These records showed all the dates between January 1, 2006, and January 26, 2009, on which Defendant had entered the gym. Without obtaining a subpoena, Special Agent Mark Sabo of State Attorney General's office had requested the records from Aquatic Fitness Center, and the records were subsequently provided.) Defendant's motions were denied and the evidence was admitted.

---

[1] The false swearing charge was later dropped.
[2] The pro se representation occurred after this Court allowed two other attorneys, both privately retained, leave to withdraw their appearance and representation.

2

At the conclusion of the trial, the undersigned found Defendant guilty of insurance fraud and perjury. Defendant was sentenced on March 20, 2015, to twenty-three months of intermediate punishment, the first thirty days of which were to be spent on house arrest with electronic monitoring, in addition to five years of consecutive probation, three years of concurrent probation, $1,000.00 in restitution, and the costs of prosecution. Defendant filed a post-sentence motion on March 23, 2015, which challenged the weight and sufficiency of the evidence. The motion was denied on March 30, 2015. Defendant filed notice of appeal to the Superior Court of Pennsylvania on April 13, 2015, and filed a Concise Statement of Matters Complained of on Appeal ("Statement") on May 5, 2015.

## ISSUES

In his Statement of Matters Complained of on Appeal, Appellant complains of the following:

1) The Court erred by denying Appellant's Omnibus pre-trial motion because:
   a. The insurance fraud charge was initiated after the expiration of the applicable statute of limitations;
   b. Appellant's motion to suppress the video footage of himself and the records associated with his gym attendance should have been suppressed as the collection of same was a violation of his Constitutional right of privacy because the person who effectuated the collection was acting as an agent for the government at the time of the collection and did so without a warrant.
2) The evidence was insufficient to support Appellant's convictions for perjury and insurance fraud because the Commonwealth failed to establish the element of materiality for both crimes. This is particularly so because the attorney for the insurance entity testified that she did not rely on Appellant's deposition testimony in any way, and in fact, recommended that the underlying civil action was a "no-pay" suit and that it should be taken to trial.
3) The evidence was insufficient to support both of Appellant's convictions because he renounced whatever alleged intent may have been inferred when he withdrew his civil lawsuit, thus rendering his deposition testimony moot.
4) Appellant's conviction for perjury was not supported by sufficient evidence because the Commonwealth did not prove beyond a reasonable doubt that he

3

was given an adequate opportunity to correct the mistakes he made in his deposition via use of the standard errata sheet because his civil lawyer failed to communicate with him in any way about the deposition.

5) Appellant's convictions were against the weight of the evidence, particularly in light of Defendant's post-trial motion/submission of a communication from witness Dr. Gogarnoiu, who explained that his trial testimony about playing tennis with Defendant was mistaken as to the dates of the matches.

This opinion will analyze applicability of the statute of limitations, the suppression of evidence, and the sufficiency and weight of the evidence, in turn.

## ANALYSIS

### I.  The Statue of Limitations does not Bar the Charge of Insurance Fraud

Defendant claims that the Commonwealth initiated the charge of insurance fraud after the expiration of the statute of limitations. Defendant thereby raises a question of law, so the standard of review for the appellate court is *de novo*, and its scope of review plenary. *Commonwealth v. Riding*, 68 A.3d 990, 993-94 (Pa. Super. 2013).

The statute of limitations for fraud is expressed in 42 Pa. C.S.A. § 5552(b), which states that prosecution must be commenced within five years after the fraud is committed. The offense of insurance fraud is defined by 18 Pa. C.S.A. § 4117, and includes when a person:

> Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, *or in support of*, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim.

18 Pa. C.S.A. § 4117(a)(2) (emphasis added).

In the instant case, Defendant committed fraud on January 28, 2009, when, during the course of his deposition he issued a false statement in support of his insurance claim.[3] Therefore,

---

[3] Defendant stated at his deposition he lacked capacity to participate in certain physical activities, such as playing tennis, while video evidence showed the contrary.

4

the Commonwealth had five years, or until January 28, 2014, to bring charges against Defendant based on the statements made during the deposition. The Commonwealth initiated charges against Defendant on December 14, 2011, well before the expiration of the applicable statute of limitations.

Although Defendant's statements at the deposition were made as a direct consequence of Defendant's civil lawsuit, rather than during the initial submission of his insurance claim to Chubb, the distinction is meaningless in the instant case. Defendant initiated litigation against Chubb's insured in furtherance of his insurance claim, and Chubb was obligated to defend its insured against the suit. Insurance fraud is not (and ought not be) limited to the pre-litigation stages of a claim. The fraud therefore occurred when the false statements were made during the deposition in 2009, not at the initial filing of the claim in 2006 (when Defendant had not yet made any false allegations). In 2011, when the charges were brought against Defendant, the statute of limitations had not yet expired.

## II.     Defendant's Motions to Suppress were Properly Denied

Defendant moved to suppress the video surveillance obtained by Chubb's private investigator and the attendance records from Aquatic Fitness Center obtained by the Commonwealth on the grounds that both were violations of Defendant's constitutional right to privacy. No conflicting evidence was presented regarding the circumstances with which the evidence was obtained. Where there is no disagreement on the factual findings of a suppression court, an appeals court may only reverse if the legal conclusions are in error or the law is misapplied. *Commonwealth v. Elmobdy*, 823 A.2d 180, 183 (Pa. Super. 2003).

5

### A. Defendant's Motion to Suppress the Video Surveillance was Properly Denied Because the Private Investigator was not Acting as a Government Agent

Both the federal and state constitutions aim to protect citizens from unlawful government intrusion.[4] *Commonwealth v. Dunnavant*, 63 A.3d 1252, 1257 (Pa. Super. 2013), *affirmed* 107 A.3d 29 (Pa. 2014). The exclusionary rule therefore does not apply to evidence obtained by a private citizen, unless acting as an agent or instrument of the state. *Commonwealth v. Dingfelt*, 323 A.2d 145, 146 (Pa. Super. 1974). To determine whether a search was conducted by a private citizen who was acting in such a capacity, a court must consider the purpose of the search, the party who initiated it, and whether the government acquiesced in it or ratified it. *Commonwealth v. Elmobdy*, 823 A.2d 180, 184 (Pa. Super. 2003). "Where the relationship between the individuals committing the wrongful acts and the government is such that those acts can be viewed as emanating from the authority of the state, our case law dictates a finding of state action." *Id.*

Here, Chubb's private investigator was not acting as a government agent. The surveillance was initiated by Chubb in 2008, to be used as a defense to the civil suit brought against it by Defendant. Sean Scanlan, a Casualty Special Investigator for Chubb, testified that he was asked by Chubb's claims examiner to hire surveillance, and thereafter assigned the task to Stumar Investigations. According to the affidavit of probable cause, the Commonwealth first became aware of the video footage and Defendant's perjurious statements on October 19, 2011. The Commonwealth was therefore aware of the surveillance until after it occurred, and could not

---

[4] Defendant does not specify in his Statement whether he contends a violation of the Fourth Amendment of the United States Constitution or the Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania. In his original motion he protests that the evidence violates his constitutional right to privacy and his right to be free from unreasonable searches and seizures. In his Memorandum of Law on his pre-trial motion, dated February 25, 2013, he restricts his argument to the Fourth Amendment.

6

have ratified it or acquiesced in it. Therefore, the investigator was acting in a purely private capacity when he surveilled Defendant in 2008.

Furthermore, David Foster of Stumar Investigations testified that he had gained access to Aquatic Fitness Center by use of a guest pass and internet promotion. He did not gain access to Germantown Cricket Club, but observed Defendant through a chain-link fence. The investigator therefore did not wield seeming government authority to obtain the footage. Since the investigator's activity did not emanate from the authority of the state, Defendant's constitutional rights were not violated, and the motion to suppress was properly denied.

Defendant alleges that because Chubb pays a fee to the Commonwealth to fund insurance fraud investigations,[5] the private investigator was acting as an agent of the Commonwealth. Defendant's argument, albeit creative, fails. Defendant ignores the case law which says the government must be exercising its authority over the agent at the time of the search. While the government has authority to excise fees from private citizens, this does not condone nor elicit the actions of private individuals or impute those actions to law enforcement. To find otherwise would make any taxpayer a government agent in any other number of circumstances. Even if the payment to the state government can be construed as subsidizing the state's prosecution of Defendant, that would make the Commonwealth an agent of Chubb, not the other way around.

---

[5] Per 40 Pa. C.S.A. § 325.23, all companies engaging in writing certain types of insurance coverages are obligated to contribute to Insurance Fraud Prevention Trust Fund. Chubb, therefore, deposited monies into this fund, which is administered by the State Treasurer and used in part for "the costs of administration and operation of . . . the unit for insurance fraud in the Philadelphia District Attorney's Office." 40 Pa. C.S.A. § 325.23(e)(2).

B.      Defendant's Motion to Suppress the Attendance Records was Properly Denied Because Defendant did not have a Reasonable Expectation of Privacy in the Records

Defendant made a motion at trial to suppress the records of his attendance at Aquatic Fitness center.[6] The records showed that Defendant attended the facility 401 times between May of 2006 and January of 2009. Defendant's motion was rightly denied. While Defendant's attendance records were obtained by a government agent (Special Agent Mark Sabo of the Bureau of Criminal Investigations of the Insurance Fraud Unit of the State Attorney General's office), who had not secured a warrant, Defendant did not have a reasonable expectation of privacy in the information provided to the Commonwealth.

Both the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania protect against warrantless searches and seizures by the government where 1) a person has a subjective expectation of privacy and where 2) the person's expectation is one that society recognizes as reasonable and legitimate. *Commonwealth v. Duncan*, 817 A.2d 455, 463 (Pa. 2003). Whether a person has a reasonable expectation of privacy is to be determined by an examination of the totality of the circumstances. *Commonwealth v. Reed*, 851 A.2d 958, 961 (Pa. Super. 2004).

However, both the federal and state constitutions allow for a warrantless search where a third party, who has joint access and control over the property, consents to the search. *Commonwealth v. Kean*, 556 A.2d 374, 387 (Pa. Super. 1989). This is because a defendant who allows joint access has assumed the risk that the third party will consent to a police search. *Id.* (citing *United States v. Matlock*, 415 U.S. 164 (1974)). Where joint access or control exists, there can be no reasonable or legitimate expectation of privacy. *Commonwealth v. Lowery*, 451 A.2d

---

[6] Defendant did not make this motion prior to trial, although he had already been heard on the issue of suppression. However, whereas Defendant was represented by (several) counsel before his trial, he was acting pro se during the trial, and the Court decided to entertain his late-made suppression argument in the interests of justice.

8

245, 248 (Pa. Super. 1982). There is therefore no privacy violation where a third party gives business records to the police at their request. *See, e.g., Commonwealth v. Duncan*, 817 A.2d 455 (Pa. 2003) (bank providing the name and address of an ATM card holder to the police); *Commonwealth v. Benson*, 10 A.3d 1268 (Pa. Super. 2010) (defendant's girlfriend providing her telephone records to police, where her phone had been used by defendant).

Here, the joint access and control that Aquatic Fitness Center had over their attendance records destroyed any expectation of privacy held by Defendant. One of the owners of Aquatic Fitness Club, Leslie Littman, testified that the attendance record was created when the defendant swiped his bar code upon entering the facility. These records were created by the business, for use by the business. The attendance records did not convey what Defendant did *after* entering the facility. The records are therefore fairly innocuous in regards to Defendant's privacy interests. *See, e.g., Duncan*, 817 A.2d at 463. Also, while most gyms are privately owned facilities, membership is typically open to the public. Members can also bring in guests. Anyone, therefore, could have monitored Defendant's attendance at the club. Defendant never asked Aquatic Fitness Center to keep his information private. Presumably, many employees had access to the records. The Court was therefore not convinced that Defendant had a subjective expectation of privacy in the attendance records held by the gym, or that such an expectation would be objectively reasonable given the gym's common authority over the records. No violation of Defendant's right to privacy occurred when Aquatic consented to provide the attendance records.

### III. There was Sufficient Evidence to Support Defendant's Convictions

Defendant claims there was insufficient evidence to support his convictions. Specifically, Defendant challenges whether the Commonwealth provided evidence that Defendant's

9

statements were material and whether Defendant possessed the requisite criminal intent. Evidentiary sufficiency presents a question of law. Therefore, the appellate court's standard of review is de novo, and its scope of review is plenary. *Commonwealth v. Meals*, 912 A.2d 213, 218 (Pa. 2006).

To judge a claim of insufficiency of evidence, an appellate court must determine whether "the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Commonwealth v. Fears*, 836 A.2d 52, 58-59 (Pa. 2003). The Commonwealth may prove all elements beyond a reasonable doubt through the use of wholly circumstantial evidence. *Id.* The evidence is sufficient "unless the proof relied upon for a conviction is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Rawles*, 462 A.2d 619, 622 (Pa. 1983). The trier of fact is "free to believe all, part, or none of the evidence." *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010) (quoting *Commonwealth v. Galvin*, 985 A.2d 783, 789 (Pa. 2009)).

A.    There was Sufficient Evidence to Find that Defendant's Statements were Material

The offenses of insurance fraud and perjury both require not just that a person make a false statement, but that the statement be material. A person is guilty of insurance fraud when he or she:

> Knowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing *material* to the claim.

10

18 Pa. C.S.A. § 4117(a)(2) (emphasis added). The statute does not provide further guidance on the meaning of the word "material," but the offense does not require a defendant to cause actual injury. *See Commonwealth v. Riding*, 68 A.3d 990, 996 (Pa. Super. 2013) (holding that the definition of fraud does not include the element of detriment to the victim); *Commonwealth v. Pozza*, 750 A.2d 889, 894 (Pa. Super. 2000) ("In the [insurance fraud] statute there is no requirement that the transference of the insurer's property must take place before a crime occurs. Rather, the mere submission of any false statement done knowingly and with intent to defraud is sufficient to violate the statute.").

The perjury statute is more explicit on what constitutes a "material" statement. A person is guilty of perjury "if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." 18 Pa. C.S.A. § 4902(a). The perjury statute clarifies that:

> Falsification is material . . . if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

18. Pa. C.S.A. § 4902(b). The comment to the statue further elucidates that

> Under existing law testimony is material where it tends to directly prove or disprove one side or the other in the main issue or where, under established rules of evidence, it indirectly tends to do so by crediting or discrediting other evidence or the testimony of another witness. The definition of "materiality" does not substantially differ from that of existing law.

18. Pa. C.S.A. § 4902(comment). A material statement under § 4902 is one which has the potential to influence a fact-finder. Whether it actually *does* influence the fact-finder is of no import. *Commonwealth v. Lobel*, 440 A.2d 602, 606 (Pa. Super. 1982); *Commonwealth v. Lafferty*, 419 A.2d 518, 521-22 (Pa. Super. 1980).

11

Defendant claims that there was insufficient evidence to prove that his statements regarding his physical abilities were material to his insurance claim or to the deposition proceeding. Defendant asserts that because Chubb's attorney already had the surveillance video of Defendant playing tennis, she couldn't have believed or relied upon Defendant's false statement that he couldn't play tennis, and therefore, this information was immaterial. Chubb's attorney stated in a document following the deposition, "I do not believe plaintiff's testimony has any affect [sic] on my liability opinion."

Clearly, whether or not Defendant could play tennis was material to the outcome of the suit. The only reason Defendant made the false statements was to contribute to the success of his claim. The only reason Chubb ordered the surveillance was to prove the limited extent of Defendant's injury. Defendant was not stretching the truth on a collateral issue, but offering a direct measure of the extent of the effects of his injuries in an attempt to increase his award, which was still at issue.

Even though Chubb's attorney knew that Defendant had played tennis at the time he stated the contrary, this does not insulate Defendant from his actions. At the deposition, Chubb's attorney found that Defendant would garner sympathy from a jury; Chubb's attorney wrote after the deposition that Defendant "appeared truthful and credible" and that a jury would "believe plaintiff until vigorous cross-examination." Therefore, if, at the deposition, Defendant had spoken truthfully (rather than arm Chubb with impeachment ammunition), it might have altered the attorney's recommendation as to whether Chubb ought to settle the claim out of court, or might have influenced jurors deciding the claim. Defendant did not need to actually change the outcome of the deposition. Defendant's false representations as to the extent of his injuries were meant to, and did, have a central role in the survival and strength of his insurance claim.

12

B.     <u>There was Sufficient Evidence to Find that Defendant had the Requisite Criminal Intent</u>

Defendant also contests that there was sufficient evidence to prove that he possessed the requisite criminal intent to commit insurance fraud and perjury. The crime of insurance fraud applies when a defendant acts "[k]nowingly and with the intent to defraud." 18 Pa. C.S.A. § 4117(a)(2). The perjury statute, in contrast, does not specify a level of intent, but only requires that the defendant does not believe his statement to be true. 18 Pa. C.S.A. § 4902(a). However, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa. C.S.A. § 302(c). Therefore, the perjury statute is satisfied when a defendant acts intentionally, knowingly, or recklessly.

The Pennsylvania Crimes Code defines each of the above mental states in section 302. A person acts "intentionally" when "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i). A person acts "knowingly" when "he is aware that it is practically certain that his conduct will cause such a result." 18 Pa.C.S.A. § 302(b)(2)(ii). A person acts "recklessly" when "he consciously disregards a substantial and unjustifiable risk that the material element [of an offense] exists or will result from his conduct." 18 Pa. Cons. Stat. Ann. § 302(b)(3). Defendant's intentions in making his false statements "can indeed, [and] often must[,] be proved by circumstantial evidence." *Commonwealth v. Broughton*, 390 A.2d 1282, 1290 (Pa. Super. 1978).

Defendant claims that he renounced any intent when he withdrew his lawsuit against Chubb. However, he withdrew his suit years after the deposition had passed, upon finding out about the surveillance. Defendant even stated on the record that he did not withdraw his suit voluntarily. Furthermore, the statute implies that a defendant's intent is contemporaneous with

13

his action, and here Defendant intended to make the false statements at the time that he made them.[7] See, e.g. *Commonwealth v. Sanchez*, 848 A.2d 977 (Pa. Super. 2004) (defendant had intent to commit insurance fraud when he signed forms in support of a claim even though he knew that the car in question was not insured at the time of the accident).

Defendant also challenges the sufficiency of the evidence of the perjury conviction on the basis that he did not have an adequate opportunity to correct the mistakes at his deposition via the use of a standard errata sheet. Defendant's former counsel, Lee Rosenfeld, testified for the defense that he did not tell Defendant about the video surveillance at the time that he received it from Chubb, weeks after the deposition.

This Court cannot find any legal basis for Defendant's argument. Defendant's perjury occured when he lied at his deposition. The only defense provided for in the statute is that "No person shall be guilty of an offense under this section if he retracted the falsification *in the course of the proceeding in which it was made* before it became manifest that the falsification was or would be exposed and before the falsification substantially affected the proceeding." 18 Pa. C.S.A. § 4902(d) (emphasis added). If Defendant had retracted his statements during the deposition, he would have been able to claim the defense. If he had retracted his statements with an errata sheet after learning of the surveillance, not only would the proceeding have concluded, but that would be after it "became manifest that the falsification would be exposed." *Id.* The Court as fact-finder found that Defendant did not attempt to retract his statements before finding out about the surveillance, despite his claims to the contrary. There was therefore sufficient evidence to find that Defendant committed perjury.

---

[7] During the trial, Defendant argued that he was confused, depressed, medicated, and merely exaggerating during his deposition, to contest that he had intended to commit insurance fraud or perjury. Defendant did not revive these arguments in his Concise Statement. However, the Court notes that to make such a finding would be to view the evidence in the light most favorable to Defendant.

## IV. Defendant's Convictions were not Against the Weight of the Evidence

Defendant claims that his convictions were against the weight of the evidence. On a motion for a new trial based on a challenge to the weight of the evidence, the trial court is not obligated to view evidence in the light most favorable to the verdict winner. *Commonwealth v. Smith*, 853 A.2d 1020, 1028 (Pa. Super. 2004). Rather, the trial court may grant a new trial because the verdict is against the weight of the evidence only when the verdict rendered is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. *Commonwealth v. Goodwine*, 692 A.2d 233, 236 (Pa. Super. 1997). An appellate court does not judge whether the verdict was against the weight of the evidence, but is limited to a review of whether the trial court palpably abused its discretion in ruling on the weight claim. *Commonwealth v. Lewis*, 911 A.2d 558, 565 (Pa. Super. 2006). A trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008).

Here, Defendant stated during a deposition that he had not played tennis at all since his automobile accident, that he had not worked out in any gyms since the accident, that the only exercise equipment he had used since the accident was his in-home treadmill, that he attends Germantown Cricket Club only for meals, and that he can no longer serve overhand. The Commonwealth presented clear evidence, through video surveillance and the gym attendance records, that Defendant's statements were untrue. Additionally, the Commonwealth offered the statement of John Melvin, who admitted that he was photographed playing tennis with Defendant (although Mr. Melvin did not offer a date for the photographs, and erroneously identified the location as the Philadelphia Cricket Club). The Commonwealth also submitted a copy of

15

Defendant's Complaint against Chubb's insured from 2008 and Defendant's Pre-Trial Statement from 2011, showing Defendant's pursuit of compensation for his injuries. Finally, the Commonwealth provided the document that Carol Comeau, Chubb's attorney, created following the deposition.

In his defense, Defendant testified that he hadn't played tennis between the time of the accident and the date of the surveillance and that he wasn't at the gym to work out as so much as to pursue his physical therapy. He explained his medical and emotional history at length, and claimed that during the deposition he was suffering from severe depression and physical pain, which caused him to be confused. He claimed that he meant, at the deposition, to convey to Chubb that he didn't truly have the ability to play tennis to his full capacity.

Defendant offered evidence of his mental illness through Dr. Iaccarino, who testified that he had treated Defendant since 2009 for severe depression, and the notes of Dr. Leslie Schwartz from October of 2014, stating that "In my professional opinion his significant depression (due in part to a break-up of a romantic relationship) and his excessive alcohol consumption contributed to his impaired thinking and judgment when he made statements in a deposition in Jan. of 2009." Defendant also introduced the report of Dr. Gerald Cooke, who had assessed Defendant for this Court to determine his competency to stand trial, which included a review of his medical records from 2011 to 2014 and new tests which diagnosed Defendant with chronic major depressive disorder, post-traumatic stress disorder, unspecified neurocognitive disorder leading to impaired memory functioning, alcohol abuse, and personality disorder.[8]

---

[8] Dr. Cooke's report includes the following: "It is this examiner's opinion that at the time he was severely depressed, and also was still abusing alcohol, including the night before the deposition (by his self-report but consistent with his overall pattern.) He was also even at that point suffering from the organic brain deterioration, which would have compromised his judgment and reasoning to some extent, though not to as great an extent as is seen currently. At the same time Mr. Feierstein's manipulative tendencies, which emerge clearly on testing, cannot be ruled out. Based on this analysis the present examiner can only state that those psychologically-based, substance abuse-based, and organically based deficits were present at the time he gave the deposition, but I cannot go as far as to say that he

16

Defendant also offered evidence regarding the extent of his physical injuries through Dr. Ari Greis, who had treated Defendant with physical therapy in 2010, through the report of Rimkus Consulting Group, which had prepared an assessment of Defendant's claim for Chubb's attorney in 2006, and through the video deposition of Dr. Gerald Williams, who had treated Defendant in 2003, 2006, 2010, and 2013. Defendant also offered around ten character witnesses.

Despite Defendant's storied history, documented emotional issues, and the legitimate injuries Defendant may have suffered as a result of the accident, Defendant's convictions for insurance fraud and perjury were not against the weight of the evidence. Defendant, a seasoned attorney, was aware that he was making false statements under oath, and he was making them to facilitate the success of his insurance claim. The evidence presented by Defendant, though distressing, does not outweigh the evidence presented by the Commonwealth to the extent that his conviction is so contrary as to shock ones sense of justice. *Goodwine*, 692 A.2d at 236.

Defendant points out in his Statement that the Court received a letter directly from one of Defendant's character witnesses, Dr. Gogarnoiu, after the conclusion of trial. Dr. Gogarnoiu testified on the stand that he had played tennis with Defendant since 2000, including in 2007 and 2008, thereby corroborating the Commonwealth's evidence. The letter attempts to amend his testimony and states that Dr. Gogarnoiu has not played tennis at all since 2005.

This post-trial letter was not in the evidence presented at trial, and therefore does not affect the weight of the trial evidence. A motion for a hearing on after-acquired evidence is the purview of a post-conviction proceeding, and is not properly pursued on direct appeal.

---

lacked the capacity to form criminal intent. . . Similarly, despite these problems that compromised his functioning to some extent, I cannot go as far as to say that he lacked criminal responsibility. He certainly had the capacity to understand that misrepresenting his status at that time was illegal and wrong. He does say that he was confused, and this examiner would agree that it is likely that given his various deficits present at that the he was confused, but again not to the point that he would lack the capacity for criminal intent or criminal responsibility."

17

## CONCLUSION

For all of the aforementioned reasons, this Court's order should be affirmed.

BY THE COURT:

_____
GARRETT D. PAGE,                    J.

Copies of the above Opinion
Mailed on _June 15th, 2015_
**By First-Class Mail:**
Commonwealth's Counsel:  DDA Kenneth McDaniels, Attorney General's Office
Edward T. Feierstein, Appellant
Todd M. Moser, Esquire,
**By Inter-Office Mail:**
Anne Schools, Court Administration

_____
Judicial Court Clerk

18